VICTORIA R. NUETZEL, State Bar No. 115124
vnuetze@bart.gov
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
300 Lakeside Drive, 23rd Floor
Oakland, CA 94612
Telephone: (510) 464-6023
Facsimile: (510) 464-6049

DALE L. ALLEN, JR., State Bar No. 145279
dallen@aghwlaw.com
MARK F. HAZELWOOD, State Bar No. 136521
mhazelwood@aghwlaw.com
KIMBERLY Y. CHIN, State Bar No. 271333
kchin@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 697-2000
Facsimile: (415) 813-2045

Attorneys for Defendant
SAN FRANCISCO BAY AREA RAPID TRANSIT
DISTRICT (erroneously sued herein as Bay Area Rapid Transit)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARK SULLIVAN, JAMES BLAIR, AND TOAN NGUYEN,<br><br>Plaintiffs,<br><br>v.<br><br>BAY AREA RAPID TRANSIT,<br><br>Defendants. | Case No.: 3:17-cv-06051-WHA<br><br>**DEFENDANT SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hon. William H. Alsup<br><br>Date: October 31, 2017<br>Time: 9 a.m.<br>Ctrm: 8<br><br>Trial: None Set |

OPP. TO MOT. FOR PRELIM. INJ.
3:17-CV-06051-WHA

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF FACTS ............................................................................................. 1
    A. BART Property Located between 62nd Street and Alcatraz Avenue Adjacent to Adeline Street and Martin Luther King Jr. Way in Berkeley, California ............................................................................................................. 1
    B. Complaints Relating to Homeless Encampments and BART's Response .......... 3
    C. The Removal of the East Encampment ................................................................ 5
III. LEGAL ARGUMENT .................................................................................................... 5
    A. Plaintiffs Have Not Demonstrated a Likelihood to Succeed on the Merits ......... 5
        1. Plaintiffs Are Unlikely to Succeed on Their Claim that Their Removal from BART Property Will Violate their Eighth Amendment Rights ............................................................................................ 6
        2. Plaintiffs Are Unlikely to Succeed on Their Claim that Their Removal from BART Property Will Violate their Fourth and Fourteenth Amendment Rights ......................................................................... 9
    B. Plaintiffs Have Not Demonstrated that They Will Likely Suffer Irreparable Harm ................................................................................................... 10
    C. Plaintiffs Have Not Shown that the Balance of Equities Tips in Their Favor or that an Injunction is in the Public Interest ..................................................... 11
IV. CONCLUSION ............................................................................................................. 13

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

# TABLE OF AUTHORITIES

Page

**U.S. Supreme Court**

*Dolan v. City of Tigard*,
   512 U.S. 374, 384, 393 (1994) .................................................................................................. 12

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419, 435-436 (1982) .................................................................................................. 12

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7, 24 (2008) ................................................................................................... 5, 6, 10, 11

**Ninth Circuit Court of Appeals**

*Bell, et al. v. City of Boise, et al.*,
   709 F.3d 890 (9th. Cir. 2013) ................................................................................................. 6, 8

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
   844 F. 2d 668, 674 (9th Cir. 1988) ............................................................................................ 10

*Jones v. City of Los Angeles*,
   444 F.3d 1118 (9th Cir. 2006) ............................................................................................. 6, 7, 8

**Federal District Courts**

*Cobine, et al. v. City of Eureka, et al.*,
   250 F. Supp. 3d 423, 430-432, (N.D. Cal. 2017) ................................................................. 6, 7, 8

*Garcia v. Google, Inc.*,
   786 F.3d 733, 740 ........................................................................................................................ 6

*Joyce v. City of County of San Francisco*,
   846 F. Supp. 843, 850 (N.D. Cal. 1994) ........................................................................... 5, 7, 12

*Lavan v. City of Angeles*
   693 F. 3d 1022 ............................................................................................................... 9, 10, 11

*Lehr v. City of Sacramento*,
   624 F. Supp. 2d 1218, 1225-26 (E.D. Cal. 2009) ....................................................................... 7

*Pottinger v. City of Miami*,
   810 F. Supp. 1551 (S.D. Fla. 1992) ............................................................................................ 7

*Veterans for Peace Greater Seattle, et al. v. City of Seattle, et al.*,
   No. C09-1032 RSM, 2009 WL 2243796 (W.D. Wash. Jul. 24, 2009) ................................. 8, 10

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

# TABLE OF AUTHORITIES

Page

**California Supreme Court**

*Tobe v. City of Santa Ana*,
  9 Cal.4th 1069, 1104-1106 (Sup. Ct. 1995) .................................................................................. 7

**California Courts of Appeal**

*Allen v. City of Sacramento*,
  234 Cal.App.4th 41, 57-60 (Cal. Ct. App. 2015) ......................................................................... 7

*In re Eichorn*,
  69 Cal.App.4th 382, 390 (Cal. Ct. App. 1998) ............................................................................ 8

**State Statutes**

California Penal Code section 602(m) ........................................................................................ 4, 8

California Penal Code section 647(e) ......................................................................................... 4, 8

**Other Statutes**

Cal. Pub. Util. Code §28500 *et. seq* ............................................................................................... 8

## I. INTRODUCTION

Defendant San Francisco Bay Area Rapid Transit ("BART" or "District") is a governmental agency which, by statute, is authorized to operate a rail transit system commonly known as "BART". Formed in 1957, BART currently has 46 stations and 112 miles of track.

This motion arises out of the District's lawful attempt to remove two unauthorized homeless encampments from its property in Berkeley, California. After BART received numerous complaints and conducted its own investigation into the nature and location of the encampments, it provided proper advanced notice of the removal.

Plaintiffs Clark Sullivan, James Blair, Toan Nguyen, Arika Miles, and Adam Bredenberg (collectively "Plaintiffs") currently occupy BART-owned land without permission and seek a preliminary injunction to enjoin BART from enforcing state trespass laws and removing the encampment from its property. Although the District is sensitive to the difficulties faced by these and other unsheltered individuals, Plaintiffs have not sufficiently established that they are entitled to such extraordinary relief. BART requests that the Plaintiffs' motion for preliminary injunction be denied.

## II. STATEMENT OF FACTS

### A. BART Property Located between 62nd Street and Alcatraz Avenue Adjacent to Adeline Street and Martin Luther King Jr. Way in Berkeley, California

In Berkeley, there are, among others, four parcels (O-R682, O-R683, O-R693, and O-R694) between Alcatraz Avenue in the north, 62nd Street in the south, Marth Luther King Jr. Way on the east, and Adeline Street in the west. (Abbott Decl. ¶¶ 4-6.) In this area, BART has an above-ground trackway that runs north-south and transitions to an underground tunnel just south of Alcatraz Avenue. (Abbott Decl. ¶ 10; Franklin ¶ 3.) Parcels O-R682 and O-R683 are located west of the trackway and east of Adeline Street. (Abbott Decl. ¶¶ 5-6, Exh. B.) Parcels O-R693 and O-R694 are located east of the trackway between Alcatraz Avenue and 63rd Street. (Abbott Decl. ¶¶ 5-6, Exh. B.)

In 1971, BART entered into an Agreement with the City of Berkeley, whereby portions of parcels of O-R682, O-R683, O-R693, and O-R694 were designated as Right of Way for Street

1  Relocation and conveyed to the City of Berkeley to construct new street, utility, and median
2  improvements. (Abbott Decl. ¶¶ 5, 8, Exhs. B, C.) The portions of these parcels conveyed to the
3  City of Berkeley are shaded in gray in the right of way map, which is Exhibit B to the Declaration
4  of Robert Abbott. (Abbott Decl. ¶ 8, Exh. B.) The remainder portions of these parcels, which are
5  outlined in red and orange in Exhibits B and D, respectively, to the Declaration of Robert Abbott,
6  remain in fee ownership to BART. (Abbott Decl. ¶¶ 9, 11, Exhs. B, D.)

  The 1971 Agreement between BART and the City of Berkeley provided, among other
things, that the City of Berkeley would maintain landscaping in this area, and that "[n]o street
furniture, playground equipment or any other facilities . . . be added to the landscaped areas
without the prior written approval of [BART]". (Abbott Decl. ¶ 8, Exh. C at 4-6.) The City of
Berkeley has maintained and currently does maintain the subject areas pursuant to the 1971
Agreement. (Brooks Decl. ¶ 8.)

  The encampment (called the "HERE/THERE" camp) at issue in this motion is located on
the remainder portions of parcels O-R682 and O-R683, which is BART property
("HERE/THERE Encampment"). (Brooks Decl. ¶ 7.) A separate homeless encampment was
located on the remainder portions of parcels O-R693 and O-R694, which is also BART property
("East Encampment"). (Brooks Decl. ¶ 7.) Below is a labelled aerial overview of this area for
demonstrative purposes.



2

OPP. TO MOT. FOR PRELIM. INJ.
3:17-CV-06051-WHA

1    Neither encampment has permission from BART to occupy its property. (Brooks Decl. ¶
2    9.) The City of Berkeley has not requested written approval from BART to allow either
3    encampment to occupy BART's property. (Brooks Decl. ¶ 9.)
4    These BART-owned properties are not suitable for long-term habitation because there is
5    no shelter, running water, or electricity. (Sandoval Decl. ¶ 7.) In fact, allowing individuals to
6    continue to occupy these lands raises health, safety, liability, and security concerns. (Burrows
7    Decl. ¶ 4; Franklin Decl. ¶¶ 3-6; Sandoval Decl. ¶ 7.) Specifically, the inevitable collection of
8    garbage, food, trash, and other debris is a sanitation risk. (Sandoval Decl. ¶ 7.) As admitted by
9    Plaintiffs, there is a risk of a Hepatitis A breakout. (Pltf. 1st Am. Cmplt., Dkt. No. 22, at ¶¶ 12,
10   66; Wall Decl., Dkt. No. 32, at ¶¶ 38-41; Wilkinson Decl., Dkt. No. 36, at ¶ 8.) Additionally,
11   having unauthorized persons on BART property exposes BART to liability risks. (Burrows Decl.
12   ¶ 4.) Further, the location of the HERE/THERE Encampment is adjacent to BART's trackway
13   when it transitions to an underground tunnel. (Franklin Decl. ¶ 3.) While there is a fence that
14   cordons off the BART right of way, this transition area is vulnerable to a terrorist attack.
15   (Franklin Decl. ¶ 4.) This area may also be used as an access point during an emergency.
16   (Franklin Decl. ¶ 6.) For these reasons, it is important to keep the area clear. (Franklin Decl. ¶ 5.)

17   **B.    Complaints Relating to Homeless Encampments and BART's Response**

18   In August 2017, BART began receiving complaints from nearby residents and businesses
19   relating to the homeless encampments. (Brooks Decl. ¶ 3.) In particular, BART received
20   complaints from administrators of the American International Montessori School located at 3339
21   Martin Luther King Jr. Way in Berkeley, California about the East Encampment. (Brooks Decl. ¶
22   3.) Due to the 1971 Agreement, BART initially thought that the property in this area on the east
23   and west side of the trackway was owned by the City of Berkeley because the City had
24   consistently maintained the area. ((Brooks Decl. ¶¶ 6, 8.)
25   Once BART determined that the property occupied by both encampments was owned by
26   BART, it began outreach efforts to all individuals in those encampments. (Sandoval Decl. ¶¶ 4-5.)
27   On October 11, 2017, representatives of BART, including its Community Outreach
28   Liaison, Armando Sandoval, visited both encampments. Mr. Sandoval was accompanied with a

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

201957.1

representative from Swords to Plowshares, a community-based nonprofit. During this visit, there was a discussion with the HERE/THERE Encampment advising them that the property belonged to the District and that there was a need to address potential safety issues and concerns. Mr. Sandoval arranged for other community partners and outreach programs, such as Operation Dignity, Eastbay Community Recovery Project, Berkeley HOT Team and the HUB program, to visit the encampments. (Sandoval Decl. ¶¶ 4-5.)

On October 16-18, 2017, parents of students who attend the American International Montessori School submitted numerous complaints relating to the East Encampment, noting violence, public sex acts, public drug and alcohol use, and increased garbage and trash. (Brooks Decl. ¶ 4, Exh. A.) Many expressed concern for the health and safety of the neighborhood, including the young children who attended the nearby school. (Brooks Decl. ¶ 4, Exh. A.) They also noted that this property was no longer usable by the neighborhood, including students and the school, due to the growing encampment. (Brooks Decl. ¶ 4, Exh. A.) Although their complaints were primarily directed at the East Encampment, several complainants requested removal of all encampments, including the HERE/THERE Encampment located on the west side of the trackway. (Brooks Decl. ¶ 4, Exh. A at 50, 54-56, 62, 63-64, 68-69.)

On October 21, 2017, BART police posted trespass notices in and around portions of parcels O-R682, O-R683, O-R693, and O-R694, which the HERE/THERE Encampment and the East Encampment occupied without permission. (Sandoval ¶ 6.) These notices informed individuals occupying that property that they were trespassing on private property in violation of California Penal Code section 602(m) and advised the individuals that they had 72 hour notice to vacate the property and remove their personal property. (Sandoval Decl. ¶ 6; *see also* Johns Decl., Dkt. No. 37, at ¶¶ 6-11, Exhs. B, C.) The notices also warned individuals that personal property not removed within 72 hours would be removed by BART. (*Id.*) Additional notices informed individuals that they were in violation of California Penal Code section 647(e) and advised of "growing concern about health and safety conditions". These notices provided information relating to services available through the City of Berkeley for shelter and/or housing as well as free meals. (Sandoval Decl. ¶ 6; *see also* Johns Decl., Dkt. No. 37, at ¶¶ 6-11, Exhs. B, C.)

### C. The Removal of the East Encampment

On October 25, 2017, BART, with support and assistance from the City of Berkeley, removed the East Encampment from the BART-owned portions of parcels O-R693 and O-R694.[1] (Haight Decl. ¶¶ 3-4.) The removal occurred more than 72 hours after the Notice of Trespass was posted on October 21, 2017. (Haight Decl. ¶ 3.) Individuals were asked to vacate the property and given the opportunity to gather their belongings. (Haight Decl. ¶ 5.) There were no arrests and there were no physical or verbal altercations. (Haight Decl. ¶ 5.) Personal property that remained was collected. (Haight Decl. ¶ 6.) Notices were provided to individuals and left at the property regarding how long any collected property would be held and where it could be reclaimed. (Haight Decl. ¶ 6, Exh. A.)

## III. LEGAL ARGUMENT

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Such relief constitutes an extraordinary use of the Court's powers, and is to be granted *sparingly* and with the ultimate aim of preserving the status quo pending trial on the merits. *Joyce v. City of County of San Francisco*, 846 F. Supp. 843, 850 (N.D. Cal. 1994) (emphasis added.). In exercising its sound discretion, the Court should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Winter*, 555 U.S. at 24. In order to obtain injunctive relief, the party seeking the injunction must demonstrate that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

### A. Plaintiffs Have Not Demonstrated a Likelihood to Succeed on the Merits

Plaintiffs contend that if BART is allowed to proceed with the removal[2] of the

---

[1] The East Encampment was not subject to the temporary restraining order which was granted as to the HERE/THERE Encampment on October 24, 2017. (Scheduling Order, Dkt. No. 14.)

[2] Plaintiffs incorrectly refer to the removal as an "eviction". (*See, e.g.*, Pltf. 1st. Am. Cmplt., Dkt. No. 22, at ¶¶ 15-16, 19, 21, 24, 29, 49; Pltf. Mot. for Prelim. Inj., Dkt. No. 23, at 4:26, 5:22-23, 7:12-13.) Plaintiffs are not being "evicted" from BART property, which implies a landlord-tenant relationship. They are being asked to vacate property that they are illegally occupying without permission.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

201957.1

HERE/THERE Encampment pursuant to its lawful Notice of Trespass, Plaintiffs and similar situated individuals will face "immanant [sic] violation of their rights under the Eighth, Fourth, and Fourteenth Amendments". (Pltfs. Mot. for Prelim. Inj., Dkt. No. 23, at 5:4-10.) Each of these arguments lacks legal merit.

### 1.  Plaintiffs Are Unlikely to Succeed on Their Claim that Their Removal from BART Property Will Violate their Eighth Amendment Rights

Whether Plaintiffs can demonstrate a likelihood of success on the merits is the most important factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740. "Because it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, we 'need not consider the remaining three [*Winter* elements].'" *Id.* (citations omitted.)

Plaintiffs' Eighth Amendment claim relies upon those cases challenging a city's enforcement of municipal ordinances regulating camping, sleeping, sitting, and lying on public property. *See Bell, et al. v. City of Boise, et al.*, 709 F.3d 890 (9th. Cir. 2013) (Plaintiffs challenged the constitutionality of enforcing the City of Boise's camping ordinance when there is inadequate shelter space available on Eighth Amendment grounds); *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (9th Cir. 2007) (Plaintiffs challenged the constitutionality of enforcing the City of Los Angeles' sit, lie, and sleep ordinance when no shelter beds were available on Eighth Amendment grounds); *Cobine, et al. v. City of Eureka, et al.*, 250 F. Supp. 3d 423, 430-432, (N.D. Cal. 2017) (Court denied City's motion to dismiss Plaintiffs' Eighth Amendment claim against the City's camping ordinance because a determination of the viability of the Plaintiffs' claim was premature).

None of the cases upon which Plaintiffs explicitly rely hold that there has been a violation of a homeless individual's Eighth Amendment rights through the enforcement of municipal ordinances. In *Bell, et al. v. City of Boise, et al.*, the Ninth Circuit simply reviewed the trial court's decision to dismiss Plaintiffs' Eighth Amendment claims when granting the Defendants' motion for summary judgment, but it did not determine the merits of Plaintiffs' claims. Similarly, in *Cobine, et al. v. City of Eureka, et al.*, the Court denied the City's motion to dismiss as to the Plaintiff's Eighth Amendment claims, but did not rule on the merits of those claims. *Jones v. City*

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

201957.1

*of Los Angeles* has been vacated with the Ninth Circuit explicitly stating that "we dismiss this appeal as moot [and] vacate our opinion in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006)[.]" *Jones v. City of Los Angeles*, 505 F. 3d 1006 (9th Cir. 2007). As such, *Jones* is not binding upon this Court. *Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218, 1225-26 (E.D. Cal. 2009) ("This Court finds that, though the *Jones* opinion is informative, it is not binding, and the Court will limit the weight given the decision accordingly.").

Courts in the Ninth Circuit and California that have reviewed Eighth Amendment challenges to the enforcement of municipal sit, lie, sleep, and camping ordinances have found such claims lacked merit.[3] *Lehr*, 624 F. Supp. 2d at 1226-1234 ("While this Court is sympathetic to the plight of Plaintiffs in this case, as well as to that of all individuals who are without shelter, a decision in favor of Plaintiffs today would be dangerous bordering on irresponsible. Accordingly, the Court now finds that Plaintiffs' Eighth Amendment claims fail as a matter of law."); *Joyce*, 846 F. Supp. at 853-858 ("[T]his Court is convinced that adopting the central thesis of plaintiffs' in this case would be an equally revolutionary doctrinal decision and would be an equally inappropriate intrusion into state and local authority."); *Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1104-1106 (Sup. Ct. 1995); *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 57-60 (Cal. Ct. App. 2015) ("Sacramento's ordinance punishes the acts of camping, occupying camp facilities, and using camp paraphernalia, not homelessness. . . . Because the Eighth Amendment does not prohibit the punishment of acts [citations omitted], plaintiffs' challenge based on cruel and unusual punishment lacks merit.").

Moreover, Plaintiffs' cited cases are all distinguishable from the present circumstances because BART is not a municipality. BART is a public transportation system. *See* Cal. Pub. Util. Code § 28500 *et. seq*. It is wholly unequipped to manage or maintain a homeless encampment on

---

[3] Plaintiffs make passing reference to *Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992) in its moving papers. In *Pottinger*, the court held that enforcing various city ordinances relating to lying down, sleeping, standing, sitting, or performing "other essential, life-sustaining activities" violated the Eighth Amendment. 810 F. Supp. at 1561-1565. However, the Northern District of California has, in the past, declined to follow *Pottinger*, finding that its reasoning was "a dubious extension of *Robinson* and *Powell*, and of questionable merit in light of concerns implicating federalism and the proper role of the Court in such adjudications." *Joyce*, 846 F. Supp. at 856.

its property. Unlike a municipality, BART does not have any resources to provide services for the homeless and lacks the ability to manage or maintain a homeless encampment on its property. The fact that a transportation agency is not equipped to provide for a homeless encampment was a factor in a court's decision to deny a motion for preliminary injunction brought by homeless individuals. *Veterans for Peace Greater Seattle, et al. v. City of Seattle, et al.*, No. C09-1032 RSM, 2009 WL 2243796 (W.D. Wash. Jul. 24, 2009) (denying a motion for preliminary injunction brought by homeless individuals seeking to enjoin the Washington State Department of Transportation from sweeping their encampment based on, *inter alia*, Eighth Amendment grounds). Notably, Plaintiffs have not demonstrated or alleged that BART is responsible for providing such resources itself. (*See* Pltf. Mot. for Prelim. Inj., Dkt. No. 23, at 7:9-10 ("[I]t appears uncontestable here that the *City of Berkeley* does not have shelter space available for plaintiffs and the other members of the HERE/THERE camp.") (emphasis added)).

In addition, the circumstances that resulted in Eighth Amendment challenges against municipalities do not exist here. The theory advanced in cases such as *Bell*, *Jones*, and *Cobine* is that enforcement of *municipal ordinances* regulating camping, sleeping, sitting, and lying on public property is unconstitutional and violates an individual's Eighth Amendment right against cruel and unusual punishment *when the city enforcing the ordinance is unable to provide adequate shelter space for all of its homeless individuals*. The theory is based, in part, on the necessity defense. *In re Eichorn*, 69 Cal.App.4th 382, 390 (Cal. Ct. App. 1998). However, this theory cannot be applied to BART because the District does not provide shelter space for homeless individuals and is not responsible for providing such services nor is the District attempting to enforce an ordinance regulating camping, sleeping, sitting, or lying on public property. Instead, the District is attempting to enforce California Penal Code section 602(m), which prohibits entering and occupying real property without consent of the owner, and California Penal Code section 647(e), which prohibits lodging in a place without the permission of the owner. The fact that the City of Berkeley may or may not have inadequate shelter space does not give rise to an Eighth Amendment violation by BART.

Finally, none of the cases relied upon by Plaintiffs stands for the proposition that

enforcing state statutes against trespass amounts to an Eighth Amendment violation. All of the cases cited by Plaintiffs involve Eighth Amendment challenges to enforcement of municipal ordinances, which is distinguishable from the present circumstances.

BART is a public transportation agency that is attempting to do nothing more than enforce trespass laws. As a result, Plaintiffs are unlikely to succeed on their Eighth Amendment claim.

**2. Plaintiffs Are Unlikely to Succeed on Their Claim that Their Removal from BART Property Will Violate their Fourth and Fourteenth Amendment Rights**

In *Lavan v. City of Angeles*, the Court held that homeless individuals are entitled to meaningful notice and an opportunity to be heard before their unattended but unabandoned property is seized and destroyed. 693 F.3d 1022, 1025, 1032. If such procedural protections are followed, there will be no Fourth or Fourteenth Amendment violations. *Id.* at 1032. Plaintiffs are unlikely to succeed on the merits of this claim, because there has been no showing that BART will fail to comply with *Lavan* during removal of the HERE/THERE Encampment.

Here, BART has followed and intends to follow procedures consistent with the Court's holding in *Lavan* when removing unauthorized encampments from its property. BART has specific trespass procedures, which requires at least 72-hours notice of the removal and specifies maintenance procedures for personal property, including guidelines for determining the difference between personal property and debris. (Brooks Decl. ¶ 5, Exh. B.) BART is willing to stipulate that it will follow such procedures during the removal of the HERE/THERE Encampment in order to ensure compliance with *Lavan*.

Indeed, BART followed such procedures when removing the East Encampment from its property. Prior to the posting of the trespass notices, Mr. Sandoval informed individuals that they were on BART property and provided information on available city resources. BART then provided 72 hours notice of the intended removal by posting written notices in the area where the removal would occur on October 21, 2017 and handing those notices to individuals in the area. At that time, BART also provided written information relating to services available through the City of Berkeley for shelter and/or housing as well as free meals.

More than 72 hours after notice, on October 25, 2017, BART, with the assistance of the

City of Berkeley, began the removal process. Individuals at the East Encampment were provided with an opportunity to gather their personal belongings and vacate. Personal property that was left behind was collected. A notice was left informing individuals how long any collected property would be held and where it could be reclaimed. The collected property remains currently stored with the City of Berkeley pursuant to the notice.

Because these procedures conform to the requirements of *Lavan* and BART has previously demonstrated compliance with these procedures, Plaintiffs are unlikely to succeed on the merits of the Fourth and Fourteenth Amendment claims.

### B. Plaintiffs Have Not Demonstrated that They Will Likely Suffer Irreparable Harm

Plaintiff must demonstrate immediate threatened injury as a prerequisite for preliminary injunctive relief. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F. 2d 668, 674 (9th Cir. 1988). A preliminary injunction cannot be granted on the mere possibility of irreparable harm. *Winter*, 555 U.S. at 22.

Here, Plaintiff alleges that the irreparable harm will be the loss of "the relative comfort of a clean, safe camp" and that the "alternative is bleak – cold, wet, insecure, and dangerous conditions." There, however, has been no showing that this "alternative" is their only option. Indeed, BART has attempted to connect Plaintiffs with resources. It identified services available through the City of Berkeley for shelter and/or housing as well as free meals. *See Veterans for Peace*, 2009 WL 22243796 at *3-4 (finding "the irreparable nature of the harm potentially imposed" to be "not as substantial" because Plaintiffs were provided with opportunities for assistance and appropriate resources).

While not explicitly alleged, BART anticipates that Plaintiffs will claim irreparable harm arising from potential constitutional infringements. However, as discussed above, it is unlikely that Plaintiffs will suffer any constitutional violation. With regard to Plaintiffs' Eighth Amendment claim, it is legally unclear how, if at all, the cruel and unusual punishment clause could potentially apply to BART because (1) it is a transportation agency attempting to enforce state trespass laws (as distinguished from a city attempting to enforce municipal ordinances

against camping, sleeping, sitting, and lying on public property when there is inadequate shelter space), and (2) no court has yet to find, on the merits, that such enforcement does violate the Eighth Amendment. Likewise, with regard to Plaintiffs' Fourth and Fourteenth Amendment claim, there is no showing that such violations will occur given that BART's trespass procedures conform to the legal requirements of *Lavan* by providing meaningful notice and an opportunity to be heard. BART has provided the HERE/THERE Encampment with meaningful notice of the removal. Individuals will have an opportunity to collect their property and vacate the property before removal. Any remaining personal property will be collected and stored for a designated amount of time to allow for reclamation. The location of the storage facility will be provided to individuals of the HERE/THERE Encampment along with directions on how to reclaim any collected personal property before disposal.

Given the foregoing, Plaintiffs have failed to demonstrate that they will suffer imminent irreparable harm in order to justify a preliminary injunction.

### C. **Plaintiffs Have Not Shown that the Balance of Equities Tips in Their Favor or that an Injunction is in the Public Interest**

The balance of equities and consideration of the public interest are pertinent in assessing the propriety of any injunctive relief. *Winter*, 555 U.S. at 32.

Here, Plaintiffs seek to prevent BART from removing individuals who are on BART-owned property without permission or authorization. Should such an injunction be granted, the consequences will be far-reaching and immediate.

Indeed, BART has several compelling interests that justify denial of this motion. First, as noted previously, BART is not equipped to manage or maintain a homeless encampment on its property. It has neither the resources nor the ability to provide adequate support to homeless individuals. Moreover, the property on which Plaintiffs seek to remain is not suitable for long-term habitation. There are no facilities or services available at the property that would ensure healthy, sanitary, and safe living conditions. As noted in their papers, Plaintiffs have brought in a porta john and handwashing station in order to address health and sanitation concerns, underscoring that the property itself is unfit for habitation. (Pltf. Cmplt., Dkt. No. 22, at ¶ 66.)

Additionally, the location of the HERE/THERE Encampment is adjacent to BART's trackway and near a transitional area where the tracks go from above-ground to an underground tunnel. (Franklin Decl. ¶ 3.) Having individuals and possessions near this area raises serious security concerns and could potentially hamper emergency response. (Franklin Decl. ¶¶ 4-6.) It also exposes BART to potential liability risks. (Burrows Decl. ¶ 4.)

Finally and most importantly, BART, as owner of the subject property, has a fundamental right to exclude others from its property. *See, e.g.*, *Dolan v. City of Tigard*, 512 U.S. 374, 384, 393 (1994) ("this right to exclude others is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'"); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-436 (1982) ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.") Depriving BART of its right to enforce trespass laws against unauthorized individuals on its property would severely undermine its authority to control its own property and significantly limit its power to address situations on its own property. *See Joyce*, 846 F. Supp. at 856-858 (considering the impact on state and local law enforcement efforts if homelessness was considered a "status"). Given the nature of BART's operations as a transit agency, it is imperative that its ability to regulate and control its own property, including those who access the property, remain unhampered.

Therefore, the balance of equities and the public interest weight in favor of BART, and Plaintiffs' request for a preliminary injunction must be denied.

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

While BART remains sympathetic to the situation facing homeless individuals in the Bay Area, such extraordinary relief cannot be granted in light of the Plaintiffs' showing in the present circumstances. Accordingly, BART respectfully requests this Court deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted,

Dated: October 30, 2017    SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT

By: */s/ Victoria R. Nuetzel*
VICTORIA R. NUETZEL
Attorneys for Defendant
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (erroneously sued herein as Bay Area Rapid Transit)

Dated: October 30, 2017    ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP

By: */s/ Mark F. Hazelwood*
DALE L. ALLEN, JR.
MARK F. HAZELWOOD
KIMBERLY Y. CHIN
Attorneys for Defendant
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (erroneously sued herein as Bay Area Rapid Transit)

201957.1