IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARK SULLIVAN, JAMES BLAIR, TOAN NGUYEN, ARIKA MILES, and ADAM BREDENBERG,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, and SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>Defendants. | No. C 17-06051 WHA<br><br>**ORDER RE MOTION FOR PRELIMINARY INJUNCTION** |

**INTRODUCTION**

In this action for violation of constitutional rights, plaintiffs move for a preliminary injunction. For the reasons herein, the motion is **DENIED**.

**STATEMENT**

Plaintiffs are members of an "intentional community of homeless Berkeley residents" that formed in 2015, which refers to itself as First They Came for the Homeless. The group, which consists of both men and women, camps together in various areas around Berkeley, most recently on a parcel of land in Berkeley on the west side of the BART tracks near the intersection of Adeline Street, Stanford Street, and Martin Luther King Jr. Way. This area is sometimes referred to as the "HERE/THERE" encampment due to a large statue on the site bearing those words (Amd. Compl. ¶¶ 13–17; Dkt. Nos. 26; 37 Exh. K).

Since forming, the group has been removed from a number of locations. These removals have been carried out in the early morning by Berkeley Police, who have seized and thrown away property that is left behind after the removal. Members of the group have been cited, arrested, or

jailed for sleeping in public (Amd. Compl. ¶¶ 13–17, 44, 49, 54–62; Dkt. Nos. 23 at 3 n.1; 26; 37 Exh. K).

The group has been living on the land adjacent to the BART tracks on the Berkeley/Oakland border for approximately the past ten months, although numbers have fluctuated with some new members arriving and others leaving for permanent housing or shelters. The amended complaint alleges that approximately twenty to thirty people stay at the encampment at any given time. The group has received some support from community groups such as Friends of Adeline, who have assisted with the purchase of necessary items for the encampment including a port-a-potty and hand washing station, and helped group members remove trash from the encampment (Amd. Compl. ¶¶ 19, 65–66, 87; Dkt. Nos. 23 at 2–3; 26 ¶¶ 1, 23).

The parcel occupied since December 2016 belongs to defendant San Francisco Bay Area Rapid Transit District ("BART"), which is a municipal utility district. It is one of several parcels (including a parcel on the east side of the BART tracks) that is subject to a sharing agreement with defendant the City of Berkeley pursuant to which Berkeley assumed maintenance and landscaping duties of the parcels, though BART has retained ownership. Plaintiffs never sought or received permission from BART to occupy this land (Dkt. Nos. 52 ¶¶ 6–7, 9, Exh. D; 53 ¶¶ 5, 8–9, 11, Exhs. B, C; Cal. Pub. Util. Code § 28500 *et seq.*).[1]

BART maintains written procedures regarding how to deal with incidents of trespass on BART property. BART performs a site inspection in the area of the alleged trespass to confirm whether it is occurring on BART property. In the event that BART determines people are trespassing on its property (either by leaving personal items there or being physically present on the land), BART posts a sign notifying them of the trespass and informing the trespassers that they will have at least 72 hours within which to remove their property and vacate the area. If the property is not removed in the allotted time, BART physically removes the property and posts a notice at the

---

[1] Another encampment also sprung up on the east side of the BART tracks at the intersection of 63rd Street and Martin Luther King Jr. Way some time after the plaintiffs' encampment began to occupy the area on the west side of the tracks. The east side encampment is not affiliated with the west side encampment, and was removed on October 25, after having been given 72 hours notice from BART police. There were numerous complaints from community members regarding illegal conduct at the encampment, including violence, drug use, and public sexual acts (*see* Dkt. No. 52 at 3–4, Exh. A). Furthermore, there was a death at the west side encampment in October, believed to be from a drug overdose.

site indicating the date it was removed and contact information for claiming the property. BART documents these incidents, including by taking photographs of the site and creating a log listing the details of interactions with third parties regarding the trespass, and the date that any personal property was removed from the site (Dkt. No. 52 Exh. B).

On October 21 at approximately 4:00 p.m., BART Police arrived at the encampment and posted a trespass notice, which stated (Amd. Compl. at ¶ 71; Dkt. No. 37 Exh. B):

> Notice of Trespass. To all persons using these premises: You are trespassing on private property in violation of California Penal Code 602(m) and are hereby ordered to vacate the premises and PERMANENTLY remove all of your property. All items not removed within 72 hours of the date of this notice will be removed by BART.

BART police also posted a second notice at the encampment informing residents that they were violating California Penal Code Section 647(e), commanding them to leave immediately, and providing contact information for Hub, a Berkeley program that assists the homeless, as well as Dorothy Day House, which provides free meals (Dkt. Nos. 37 Exh. C; 46 ¶ 6).

On October 23, three pro se plaintiffs, Clark Sullivan, James Blair, and Toan Nguyen filed this lawsuit, and moved for a temporary restraining order to enjoin their removal — initially scheduled to take place on October 24 — from the west side encampment (Dkt. Nos. 1, 2).

A hearing on the TRO was set for October 24. At the hearing, attorneys Dan Siegel, and Emilyrose Johns appeared on behalf of our plaintiffs. The court temporarily enjoined the removal of the west side encampment in order to give counsel for both plaintiffs and defendants an opportunity to brief the issues, and set a new hearing for October 31, candidly acknowledging it was doing so without a showing of probability of success on the merits or even a showing that there were serious questions going to the merits (Dkt. Nos. 11, 13).

On October 25, BART police, with the assistance of Berkeley police, removed the encampment located on the east side of the BART tracks, the members of which had no part in this suit. There were no altercations or arrests during the removal, and personal property that was left behind was collected and moved to a storage facility. BART police posted notices explaining where personal items would be stored and how to contact the facility. The notice explained that unattended property would be held by the City of Berkeley for 14 days unless an item "appears from visual

3

1  observation to have a resale value of $100 or more, in which case it shall be held for 90 days." The
2  notice further provided that "[i]tems that are usable for shelter, such as tents, tarps, and sleeping
3  bags shall be retained for 45 days regardless of apparent value" (Dkt. Nos. 37 ¶¶ 1–5; 49 ¶¶ 5–6,
4  Exh. A).

5  On October 26, plaintiffs, now represented by counsel, filed an amended complaint against
6  defendants Berkeley and BART, which alleges violations of the Americans With Disabilities Act, as
7  well as Section 1983 violations based upon violations of the Fourth, Eighth, and Fourteenth
8  Amendments (Amd. Compl. at 14–16). The amended complaint seeks relief on behalf of a putative
9  class of individuals of present and future residents of the First They Came for The Homeless
10 encampment (*id.* at 12). Also on October 26, plaintiffs filed a motion for a preliminary injunction
11 based upon alleged Fourth, Eighth, and Fourteenth Amendment violations. They seek an order
12 prohibiting defendants from removing them from their current location or seizing their property
13 (Dkt. No. 23).

14 Defendants Berkeley and BART filed separate oppositions. This order follows full briefing
15 and oral argument.

**ANALYSIS**

17 To succeed on a motion for preliminary injunction, plaintiffs must show that (1) they are
18 likely to succeed on the merits of their claim; (2) they will suffer irreparable harm in the absence of
19 relief; (3) the balance of hardships tips in their favor; and (4) a preliminary injunction is in the public
20 interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). The four-part test is also
21 satisfied if "serious questions going to the merits [are] raised and the balance of hardships tips
22 sharply in the plaintiff's favor" so long as there is also a likelihood of irreparable harm and an
23 injunction would be in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
24 1135 (9th Cir. 2011) (citations and quotations omitted).

25 Plaintiffs argue that they have met all the prerequisites set forth in *Winter* and a preliminary
26 injunction is the only way to protect them from violations of the Fourth, Fourteenth, and Eighth
27 Amendments of the United States Constitution.

28 This order, however, holds that our plaintiffs have failed to show that they are likely to

4

1 succeed, or that they have raised serious questions going to the merits. Moreover, plaintiffs have not
2 shown that the balance of equities tips in their favor. Accordingly, their preliminary injunction
3 motion must be **DENIED**.

### 1. NO PROVISIONAL RELIEF AGAINST BERKELEY.

Here, plaintiffs' motion seeks to enjoin their removal from BART property pursuant to BART policy and decision making (*see* Br. at 3–5). It is not enough that Berkeley's police force may provide "assistance" to BART, as alleged in the amended complaint, to subject the City to a preliminary injunction here (*see* Amd. Compl. ¶¶ 24, 77). Nor is it sufficient that Berkeley has been involved in the removal of *other* homeless encampments not at issue on this motion. The present dispute is between plaintiffs and BART, the party seeking to remove plaintiffs from its land. Accordingly, no provisional relief can be granted against Berkeley on the present record.

Even analyzed under the framework for a preliminary injunction, however, the motion for a preliminary injunction against Berkeley regarding removal from BART property would fail, as set forth below.

### 2. NO LIKELIHOOD OF SUCCESS OR SERIOUS QUESTIONS GOING TO THE MERITS.

#### A. Eighth Amendment Claim.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. While generally applied to conditions of post-conviction incarceration, it also "imposes substantive limits on what can be made criminal and punished as such," though this application should be employed "sparingly." *Ingraham v. Wright*, 430 U.S. 651, 667 (1977). In *Robinson v. California*, 370 U.S. 660, 661 (1962), for example, the Supreme Court held that a law penalizing the very status of being addicted to drugs amounted to cruel and unusual punishment. It reasoned that laws subjecting people to punishment, not for a particular action, but for their condition of being, were unacceptable under the Eighth Amendment. *Id.* at 678. Plaintiffs urge that the same analysis should apply here.

BART's actions, however, do not amount to the criminalization of plaintiffs' status as homeless. Rather, BART has reasonably invoked California's trespass statute, which prohibits people from "entering and occupying real property . . . without the consent of the owner" to prevent people from camping on its land. Cal. Pen. Code § 602(m). Indeed, the right to be free from

5

trespass is one of the oldest, and most universally recognized features of the law. *See* Ben Depoorter, Fair Trespass, 111 Colum. L. Rev. 1090, 1095 (2011). In the absence of such protection, anyone would be free to live on any property. Plaintiffs have failed to show why, *under these circumstances*, they should not be subject to California's trespass laws.[2]

The caselaw plaintiffs cite is distinguishable. As an initial matter, each decision relied upon by plaintiffs involved a city's application of an ordinance prohibiting homeless people from camping or sleeping *on city property*. *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013); *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006) *vacated by settlement*, 505 F.3d 1006 (9th Cir. 2007); *Cobine v. City of Eureka*, 250 F. Supp. 3d 423 (N.D. Cal. 2017) (Judge Jeffrey White); *Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992) (Judge Carl Atkins). Here, in contrast, we deal with a transit district. *See* Cal. Pub. Util. Code § 28500 *et seq*. This is an important distinction because, unlike a city, a transit district is not as equipped to remedy the problems associated with homelessness. Clearly, BART is not equipped to provide shelter or housing aid. Requiring that it nevertheless host a homeless encampment on its property would far exceed its statutory authorization.

Indeed, recognizing this very incongruity, the court in *Veterans for Peace Greater Seattle, Chapter 92 v. City of Seattle*, No. C09-1032 RSM, 2009 WL 2243796, at *5 (W.D. Wash. July 24, 2009) (Judge Ricardo Martinez), denied homeless plaintiffs' motion for a preliminary injunction. There, the plaintiffs had set up a camp on Washington State Department of Transportation ("WSDOT") property. In finding that they were not likely to succeed in their suit, the court held that "WSDOT is obviously unequipped to manage or otherwise maintain a homeless encampment on its property. Indeed, Plaintiffs repeatedly argue that it is the City's responsibility to provide adequate shelter for its homeless citizens, and simultaneously fail to show how the WSDOT is responsible for providing adequate housing." So too here.

Moreover, the other decisions cited by plaintiffs have other important factual distinctions.

---

[2] BART also invoked Section 647(e) of California's Penal Code, which likewise prohibits plaintiffs' from camping on its land. That statute provides that "lodg[ing] in any building, structure, vehicle, or place, whether public or private, without permission of the owners or person entitled to the possession or in control of it" constitutes disorderly conduct, a misdemeanor.

6

The injunctions issued in *Jones* and *Pottinger* dealt not with a single instance of removal from property, but widespread policies, and far-reaching ordinances, by which Los Angeles and Miami wholly deprived homeless residents of any place to live or perform necessary daily activities. *See Jones*, 444 F.3d at 1132 (enjoining ordinance that punished conduct which was "an unavoidable consequence of being human and homeless . . . in the City of Los Angeles"); *Pottinger*, 810 F. Supp. at 1553 (enjoining "custom, practice and policy of arresting, harassing and otherwise interfering with homeless people for engaging in basic activities of daily life . . . in the public places where they are forced to live"). We do not have a remotely comparable record here.

There are other vital distinctions. In *Jones*, 444 F.3d at 1132, for example, our court of appeals upheld a "narrowly tailored" injunction against a Los Angeles ordinance that prohibited sitting, lying or sleeping "in or upon any street, sidewalk or other public way" at all times anywhere in the city. In doing so, it observed that its holding was "a limited one." *Id.* at 1137. Among other things, it noted that it was *not* confronted with a ordinance that criminalized camping, or one that prohibited lying, sitting, or sleeping only at certain times, or in certain places. *Id.* at 1138. Instead, it was confronted with a total ban on lying or sleeping anywhere within city limits at any time. *Ibid.* Against this backdrop, it found that the "narrowly tailored" injunction, which permitted plaintiffs to sleep "in a small area of the city during nighttime hours" was appropriate. *Id.* at 1127, 1138. The ban in *Jones* was far more stringent and pervasive than the removal at stake here.[3]

*Cobine v. City of Eureka*, 250 F. Supp. 3d 423 (N.D. Cal. 2017) (Judge Jeffrey White) is likewise inapplicable. *Cobine* addressed a challenge in a different procedural posture — on a motion to dismiss — governed by a far different legal standard. It did not grant the "extraordinary remedy" of a preliminary injunction that plaintiffs seek here. *See Winter*, 555 U.S. at 22. *Cobine* merely held that "a determination on the viability of an Eighth Amendment challenge to [the ordinance was] premature." *Cobine*, 250 F. Supp. at 432. This decision does not support our plaintiffs position that an injunction is warranted on the record provided.

---

[3] Jones is not binding authority since the decision was later vacated by a settlement, but is nevertheless illustrative of some of the issues in, and their distinction from the instant action. *See Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218 (E.D. Cal. 2009) (Judge Morrison England, Jr.) ("[T]hough the *Jones* opinion is informative, it is not binding, and the Court will limit the weight fiven the decision accordingly.").

7

Here we are confronted with circumstances different from any of the decisions cited by plaintiffs. Plaintiffs want to maintain a city within a city, to reside and to camp, day and night, on BART's property over its objection. Plaintiffs do not seek the narrow dispensation from a total ban on any sleeping, lying, or sitting as in *Jones*. The relief plaintiffs now seek — court approval to settle indefinitely on the land of a municipal transportation district — would be unprecedented. Under these circumstances, they have not shown a likelihood of success or raised serious questions going to the merits of their Eighth Amendment claim.

### B. Fourth and Fourteenth Amendment Claims.

Plaintiffs further contend that there is an imminent threat that BART will seize their property without affording them an adequate opportunity to object to the seizure in violation of the Fourth Amendment's prohibition on unreasonable seizures and the Fourteenth Amendment's due process clause.

Plaintiffs rely exclusively on *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012). There, our court of appeals declined to overrule a preliminary injunction prohibiting Los Angeles police from seizing property absent an objectively reasonable belief that the property had been abandoned and without providing plaintiffs notice or an opportunity to object. This injunction restrained a police department policy of seizing and destroying homeless persons' property when it was even momentarily left on the street or sidewalk while homeless people stepped away "to perform necessary tasks such as showering, eating, using restrooms, or attending court." *Id.* at 1025–26. Finding that the district court properly balanced the invasion of the plaintiffs' possessory interest in their property against the city's need to seize it, our court of appeals found that the preliminary injunction was within the district court's discretion. *Ibid*. It further held that the preliminary injunction's notice requirement, and a requirement that Los Angeles maintain any seized property in a secure location for a least 90 days before destroying it, properly addressed due process concerns. *Id.* at 1024, 1032.

We deal here with a far different situation. *First*, our plaintiffs are seeking to prevent a municipal utility from removing their property from BART, not city land. *Second*, unlike the policy under attack in *Lavan*, our plaintiffs have been given notice that their property will be seized and 72

hours to make arrangements to move their property. *Third*, BART maintains a policy of storing personal property that is taken after an encampment is removed and providing notice of the property's location and an opportunity to recover the property (*see* Dkt. No. 52 Exh. B). Indeed, BART followed this very policy when it removed the encampment located on the east side of the tracks. BART posted a removal notice informing the residents of that encampment that (Dkt. No. 37 at 5):

> [u]nattended property shall be held in safe-keeping by the City of Berkeley for 14 days, unless it appears to have a resale value of $100 or more, in which case it shall be held for 90 days. Items that are usable for shelter, such as tents, traps, and sleepoing bags, shall be retained for 45 days regardless of apparent value. Item[s] shall be secured in a locked, covered, storage container.

The notice further provided the location at which the items would be stored, and a phone number to contact the storage location and claim items.

This process is not only distinct from the Los Angeles practice enjoined in *Lavan*, but approximately mirrors the requirements imposed by that injunction. Plaintiffs here have been given an opportunity to remove their personal effects from BART property, and, pursuant to BART policy, will be notified of the location of any seized property, which will be stored from anywhere between 14 and 90 days.

Under these facts, plaintiffs have not shown a likelihood that they will succeed on the merits of their Fourth and Fourteenth Amendment claims, or even raised serious questions going to the merits.

### 3. BALANCE OF EQUITIES ANALYSIS.

While the foregoing is dispositive, this order further holds that the balance of equities favors defendants. To force BART to host the encampment would open BART to potential liability for failing to police the activities in the encampment. In the other encampment nearby, a drug overdose occurred and a crazed man attacked others with a hammer. Does BART have a duty to provide police services to safeguard the encampments? Victims of hammer attacks might so allege. Parents of overdose victims might so allege. This alone prevents the balance of equities from tipping sharply in favor of plaintiffs, indeed, prevents the balance of equities from tipping in favor of plaintiffs at all.

9

**CONCLUSION**

While sympathetic to the plight of plaintiffs, and the problem of homelessness, which is ever more severe, the Court must be faithful to the law. The sad fact is that plaintiffs cannot meet the standard required for the drastic relief sought. The relief requested is far broader than any which has been previously approved.

Although no preliminary injunction will issue, this is not yet the end of plaintiffs' entire case. As stated on the record, all parties may, and should, promptly begin discovery.

BART must give fresh notice of eviction, and permit plaintiffs a minimum of 72 hours to move from the property. This will also give plaintiffs an opportunity to seek a writ from our court of appeals if they choose to do so. Plaintiffs' motion for a preliminary injunction is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: October 31, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE