IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARK SULLIVAN, JAMES BLAIR, TOAN NGUYEN, ARIKA MILES, and ADAM BREDENBERG,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY, and SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>Defendants. | No. C 17-06051 WHA<br><br>**ORDER RE MOTIONS TO DISMISS** |

**INTRODUCTION**

In this action for violation of statutory and constitutional rights, defendants BART and the City of Berkeley move to dismiss pursuant to FRCP 12(b)(1) and 12(b)(6). For the reasons herein, BART's motion is **GRANTED** and Berkeley's motion is **GRANTED IN PART**.

**STATEMENT**

Plaintiffs are members of an "intentional community of homeless Berkeley residents" that refer to themselves as "First They Came for the Homeless" or FTCftH. Since forming in 2015, the group has been removed from several locations in Berkeley, including from twelve locations between October 2016 and January 2017 alone. These removals were carried out in the early morning by Berkeley police, who seized and threw away property that the group could not carry or otherwise left behind. Plaintiffs allege that during these removals, the disabilities

of the group's members were not evaluated or accommodated. They also generally allege that members of the group "have been cited, arrested, or jailed for sleeping in public" (Amd. Compl. ¶¶ 13–17, 49, 54–62).

As of October 2017, the group had lived on land west of the BART tracks on the Berkeley/Oakland border for approximately ten months. The parcel of land occupied by the encampment — known as the "Here/There" encampment due to its proximity to an art installation with signs reading "HERE" and "THERE" — belonged to defendant San Francisco Bay Area Rapid Transit District ("BART") (Amd. Compl. ¶¶ 19–21).

On October 21, BART police served a trespass notice which stated that it would enforce an eviction in seventy-two hours. BART police also posted a second notice at the encampment informing residents that they were violating California Penal Code Section 647(e), and commanding them to leave immediately (Amd. Compl. ¶¶ 71–73).

On October 23, three pro se plaintiffs, Clark Sullivan, James Blair, and Toan Nguyen filed this lawsuit and moved for a temporary restraining order to enjoin their removal from the Here/There encampment. A hearing on the TRO was set for October 24. At the hearing, attorneys Dan Siegel and EmilyRose Johns appeared on behalf of plaintiffs. With the acquiescence of BART, an order temporarily enjoined the removal of the encampment in order to give counsel for both parties an opportunity to brief the issues, and set a new hearing for October 31 (Dkt. Nos. 1–2, 11, 13).

On October 25, BART police, with the assistance of Berkeley police, removed a different, nearby encampment whose members had no part in this suit. Afterward, BART and Berkeley workers removed all property remaining at that camp and discarded it into dumpsters (Amd. Compl. ¶¶ 78–79).

On October 26, plaintiffs, through counsel, filed an amended complaint, also against defendants BART and the City of Berkeley. It alleged violations of the Americans with Disabilities Act, as well as violations of the First, Fourth, Eighth, and Fourteenth Amendments. The amended complaint — now the operative pleading — sought relief on behalf of a putative class of present and future residents of the FTCftH encampment. Also on October 26, plaintiffs

filed a motion for preliminary relief based upon the alleged constitutional violations. An order dated October 31 denied plaintiffs' request, finding that they had not shown a likelihood of success on the merits of their Eighth, Fourth or Fourteenth Amendment claims, or even raised serious questions going to the merits (Dkt. Nos. 22–23, 55).

Defendants Berkeley and BART have now filed separate motions to dismiss under FRCP 12(b)(1) and 12(b)(6) (Dkt. Nos. 62, 67). Plaintiffs oppose. This order follows full briefing and oral argument.

**ANALYSIS**

**1.     FRCP 12(b)(1).**

On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When standing is challenged under FRCP 12(b)(1), the inquiry is much like a FRCP 12(b)(6) analysis, with the caveat that "[w]here jurisdiction is intertwined with the merits, we must assume the truth of the well-pled allegations in a complaint unless controverted by undisputed facts in the record"; unlike a FRCP 12(b)(6) analysis, it is appropriate to refer to extrinsic facts for the FRCP 12(b)(1) analysis. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted).

In general, a case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Public Utilities Comm'n of State of California v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (internal quotes and citations omitted). "In determining whether a request for declaratory relief ha[s] become moot . . . basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ibid*. Defendants both argue that this action lacks a present case or controversy.

**A.     BART.**

The uncontested declaration of Lance Haight, a Police Officer with BART, establishes that plaintiffs vacated the land adjacent to the BART tracks (Dkt. No. 63 at 2). Plaintiffs also

acknowledge they are no longer living on BART-owned property (Dkt. No. 72 at 8). Plaintiffs contend, however, that their claims against BART may proceed because plaintiffs are likely to remain homeless and to camp on BART-owned property in the future. But even assuming that plaintiffs have sufficiently alleged that they are likely to remain homeless and reside on public (or seemingly-public) land, the allegations in the amended complaint do not plausibly suggest that such land would be owned by BART. The former location of the Here/There encampment has since been fenced off, and the amended complaint fails to identify other BART-owned property in Berkeley where plaintiffs may reside in the future. Nor do plaintiffs even allege a desire to camp on BART-owned property.

Because the record fails to show that plaintiffs are likely to have another encounter with BART such that BART will again attempt to remove plaintiffs from its property, this case lacks an actual controversy as to BART. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). This case is distinguishable from *Evers v. Dwyer*, 358 U.S. 202 (1958). There, the Supreme Court held there was an actual controversy where the "the resident of a municipality [could not] use transportation facilities therein without being subjected" to the challenged statute. *Id.* at 204. Here, plaintiffs fail to demonstrate to a similar certainty that they will be subjected to BART's challenged policies and practices in the future. Accordingly, BART's motion to dismiss pursuant to FRCP 12(b)(1) is **GRANTED**.[1]

### B. City of Berkeley.

Berkeley similarly contends that the amended complaint fails to demonstrate an actual case or controversy. Not so. Plaintiffs allege that they are homeless residents of Berkeley and that Berkeley does not have sufficient resources to house its homeless residents. Indeed, they allege that of the nearly two thousand people screened for services between January 2016 and January 2017, Berkeley housed only forty-six individuals and placed fifty-nine others into

---

[1] Because this order finds that plaintiffs' claims are moot as to BART, it does not reach BART's alternative arguments that plaintiffs have failed to allege injury-in-fact and have failed to state a claim under FRCP 12(b)(6). It bears mentioning, however, that plaintiffs concede that as currently pleaded, the amended complaint fails to state a claim against BART (Dkt. No. 72 at 9). BART's motion to dismiss under FRCP 12(b)(6) and its request for judicial notice are accordingly **DENIED AS MOOT**.

4

shelters and transitional housing. These allegations plausibly suggest that plaintiffs will remain homeless and unsheltered in Berkeley for the foreseeable future.

Moreover, the amended complaint alleges that FTCftH has been targeted for removal from public spaces in Berkeley since 2015, that the group has been removed from each encampment it has established, and that the group was removed from twelve locations between October 2016 and January 2017 alone. The amended complaint further alleges that when Berkeley performs such removals, it does so without sufficient notice or adequate procedures to protect residents' property (Amd. Compl. ¶¶ 49–58). This is sufficient at the pleading stage to demonstrate a likelihood that plaintiffs will have future encounters with Berkeley police and city workers, and that such encounters will cause them injury. Berkeley's motion to dismiss pursuant to FRCP 12(b)(1) is therefore **DENIED**.

### 2. FRCP 12(b)(6).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when its factual allegations, rather than mere conclusory statements, create the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Americans with Disabilities Act Claim.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to state a claim under Title II, a plaintiff must therefore allege four elements: (1) he is an individual with a disability; (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities"; (3) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal quotes and citations omitted).

The parties agree that only one named plaintiff, Clark Sullivan, is alleged to be a qualified individual with a disability. Berkeley contends, however, that the amended complaint fails to allege facts indicating that Berkeley has acted "by reason of" Sullivan's disability. Even if the City had a facially neutral policy prohibiting people from blocking a sidewalk, Berkeley argues, enforcement of that policy would not show an intent to discriminate "even if persons with disabilities would need more time to move off of the sidewalk" (Dkt. No. 79 at 3). This argument is foreclosed by *McGary*, where our court of appeals held that a plaintiff sufficiently alleged that he was discriminated against "by reason of" his disability where a facially neutral policy burdened him in a manner "different from and greater than it burdened non-disabled residents." *McGary*, 386 F.3d at 1265. In so holding, *McGary* explained that our court of appeals has "repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced." *Ibid.*

The amended complaint fails, however, to adequately allege that Sullivan requested assistance from Berkeley or, relatedly, that Sullivan was "denied the benefits of a public entity's services, programs, or activities." To be sure, ADA claims may arise in the context of a public entity's failure to provide a reasonable accommodation despite knowledge that an individual needed it in order to enjoy meaningful access to a benefit. *See, e.g.*, *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). But while the amended complaint alleges that Sullivan is in a wheelchair and was never offered assistance in moving his property or getting his property back, it fails to allege whether Berkeley knew that Sullivan needed these particular accommodations in connection with any eviction (Amd. Compl. ¶¶ 55–56).

Although the amended complaint contains allegations regarding a former group member's request for accommodations, no such allegations are found with respect to Sullivan. Moreover, plaintiffs' general allegation that "disabilities are not evaluated or accommodated, despite some residents having known or visible disabilities," is insufficient to show how Sullivan was "excluded from participation in or denied the benefits of a public entity's services,

6

programs, or activities, or was otherwise discriminated against by the public entity." Berkeley's motion to dismiss plaintiffs' ADA claim is therefore **GRANTED**.

### B. Fourth and Fourteenth Amendment Claims.

Under the Fourteenth Amendment, homeless individuals are entitled to meaningful notice and an opportunity to be heard before their unabandoned property is seized and destroyed. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012). Plaintiffs' property is also entitled to Fourth Amendment protections. *Id.* at 1030–31. A "seizure" of property under the Fourth Amendment occurs when there is "some meaningful interference with an individual's possessory interests in that property." *Id*. at 1027.

Berkeley argues that plaintiffs' claims under the Fourth and Fourteenth Amendments are foreclosed by allegations in the amended complaint that plaintiffs received notice prior to the City's removal of their encampments. To the contrary, although plaintiffs allege that the City provided notice in advance of some evictions, they also allege that in other instances no notice was provided at all. Plaintiffs also allege that during each eviction, the City disposed of property that could not be carried from the encampment, including unattended tents and clothing. Moreover, plaintiffs allege that when the City collects property after an eviction, it makes no effort to give residents receipts for what is taken, inventory what is collected, or store property in a manner that protects it from the elements (Amd. Compl. ¶¶ 16–17, 50, 53, 58, 60–62). By alleging that the City collects and stores property without notice, and in a way that does not allow plaintiffs to retrieve it in a usable condition (or at all), the amended complaint plausibly suggests that Berkeley unreasonably seized property in violation of the Fourth Amendment and failed to comport with due process.

The amended complaint, however, only alleges that plaintiffs Sullivan and Bredenberg have been subjected to Berkeley's conduct. In particular, while the amended complaint describes twelve evictions between October 2016 and January 2017, plaintiffs Blair, Nguyen and Miles did not join FTCftH until *after* these evictions took place. And notably, only Sullivan and Bredenberg allege that they lost property as a result of Berkeley's conduct (Amd. Compl. ¶¶ 35–37, 49, 61). Accordingly, only Sullivan and Bredenberg adequately allege claims

7

under the Fourth and Fourteenth Amendments. Berkeley's motion to dismiss those claims is **DENIED**. Berkeley's motion to dismiss plaintiffs Miles, Blair, and Nguyen's Fourth and Fourteenth Amendment claims, however, is **GRANTED**.

### C. First Amendment Claim.

Plaintiffs Sullivan and Bredenberg also allege facts sufficient to survive a motion to dismiss their First Amendment retaliation claim. To bring such a claim, a plaintiff must allege: (1) that he engaged in constitutionally protected activity; (2) that the defendants' actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) that the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).

Berkeley does not dispute that FTCftH has engaged in constitutionally protected activity since its creation in 2015. Nor does Berkeley contest that its alleged conduct in repeatedly removing the encampment from various locations in the City would "chill a person of ordinary firmness" from continuing to engage in political speech. Rather, Berkeley contends that the amended complaint fails to adequately allege causation, and that the City's desire to chill free speech must be the "but-for cause" of its conduct.

In support of its argument, Berkeley cites *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900–01 (9th Cir. 2008), in which the plaintiff claimed that her publication of a newspaper article led to police officers issuing her a traffic citation. Our court of appeals held that in order to demonstrate retaliation in violation of the First Amendment, the plaintiff had to "ultimately prove that [Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants'] action." *Ibid.* In support of this standard, *Dietrich* cited to *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1231–32 (9th Cir. 2006), which in turn relied on *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999). In *Mendocino*, however, our court of appeals stated that the desire to chill a plaintiff's speech need only be "a substantial or motivating factor" in the defendant's conduct. *Ibid.* In any event, whether plaintiffs are ultimately required to prove a "but-for cause" or a "substantial or motivating factor," Sullivan and Bredenberg have met their burden at this stage of the proceedings.

8

The amended complaint adequately alleges that Berkeley targeted FTCftH for evictions in harsh winter months based on the content of the group's speech and its political engagement. In particular, plaintiffs allege that the group publicly opposed Berkeley's response to the City's homelessness crisis, including by establishing themselves in prominent places near administrative buildings, writing op-eds, and attending City Council meetings. In response to the group's criticisms, Berkeley allegedly began an aggressive campaign of evictions that included removing the group from twelve locations between October 2016 and January 2017 alone (Amd. Compl. ¶¶ 41–43, 48–49).

That Sullivan and Bredenberg later remained at the Here/There encampment (on BART property) for upwards of ten months without being removed by the City does not negate the reasonable inference that the City intended to chill the group's political speech, at least not at the pleading stage. Berkeley's motion to dismiss Sullivan and Bredenberg's retaliation claims is therefore **DENIED**.

By contrast, because plaintiffs Miles, Blair and Nguyen did not join the encampment until 2017, the amended complaint fails to demonstrate how they engaged in the protected activity or were subjected to the City's allegedly retaliatory conduct. Berkeley's motion to dismiss plaintiffs Miles, Blair, and Nguyen's First Amendment claims is accordingly **GRANTED**.

### D. Eighth Amendment Claim.

Finally, plaintiffs challenge Berkeley's enforcement of California Penal Code Section 647(e) under the Eighth Amendment. Section 647(e) makes it a misdemeanor to "lodge[] in any building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it."

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. While generally applied to conditions of post-conviction incarceration, the Eighth Amendment also "imposes substantive limits on what can be made criminal and punished as such," though this application should be employed "sparingly." *Ingraham v. Wright*, 430 U.S. 651, 667 (1977). Laws subjecting individuals to punishment, not for a particular action, but for their

9

condition of being, are unacceptable under the Eighth Amendment. *Robinson v. California*, 370 U.S. 660, 678 (1962).

In a non-binding decision, our court of appeals recognized that an ordinance prohibiting sitting, lying or sleeping "in or upon any street, sidewalk or other public way" in Los Angeles was unconstitutional as applied to the homeless. *Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated by settlement*, 505 F.3d 1006 (9th Cir. 2007). There, the record established that at the time the defendants cited or arrested the homeless, they had no choice other than to be on the streets. *Id.* at 1137. The appellate court stressed that it was not confronted with a facial challenge to the statute. *Id.* at 1138.

*Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992) (Judge Carl Atkins), is also instructive. There, the District Court for the Southern District of Florida determined that because of the unavailability of low-income housing or alternative shelter, the plaintiffs had no choice but to conduct involuntary, life-sustaining activities in public places. *Id.* at 1564. It therefore found that the conduct the plaintiffs were arrested for was "inseparable from their involuntary condition of being homeless," and that so long as the plaintiffs "[did] not have a single place where they [could] lawfully be, the challenged ordinances, as applied to them, effectively punish[ed] them for something for which they may not be convicted under the eighth amendment — sleeping, eating and other innocent conduct." *Id.* at 1564–65.

Here, as in *Jones* and *Pottinger*, the amended complaint plausibly suggests that plaintiffs have no choice but to sleep, eat, and otherwise live in Berkeley's public spaces. It fails, however, to demonstrate that Berkeley has, in effect, criminalized the status of being homeless through the enforcement of Section 647(e). Notably, plaintiffs fail to allege that Section 647(e) has been *enforced* as to any plaintiff. Although plaintiffs argue in their opposition that "they are subject to the criminal process through enforced evictions, citations, and arrest at the hands of Berkeley police," factual allegations to that effect are not found in the amended complaint.

At most, plaintiffs allege that *other* members of their group have been arrested for violations of Section 647(e), and that members of the group risk arrest due to the "vague language of the statute" (Amd. Compl. ¶ 74). While they further allege that Berkeley has

sought to "criminalize the condition of being homeless," nothing connects these allegations to the City's enforcement of Section 647(e) (Amd. Compl. ¶¶ 8, 14). The amended complaint fails to allege, for example, that in removing plaintiffs from previous encampments, Berkeley (as opposed to BART) did so under threat of arrest or citation under that statute. And although not binding on this Court, *Cobine v. City of Eureka*, 250 F. Supp. 3d 423 (N.D. Cal. 2017) is distinguishable. There, the plaintiffs were explicitly told that if they failed to vacate their encampment, they would be prosecuted under the challenged ordinance. *Id.* at 428.

Berkeley's motion to dismiss plaintiffs' Eighth Amendment claim is accordingly **GRANTED**.

### E. *Monell* Liability.

Berkeley contends that, for each of their constitutional claims, plaintiffs fail to allege that the violations resulted from policies or customs as required by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipality may be liable when a municipal policy causes an employee to violate another's constitutional right. *Id.* at 690–91. A plaintiff can establish a *Monell* claim by, among other things, "showing a longstanding practice or custom which constitutes the standard procedure of the local governmental entity." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). The practice or custom must consist of more than "isolated or sporadic incidents" and instead "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, the only constitutional claims that remain are Sullivan and Bredenberg's claims under the First, Fourth and Fourteenth Amendments. The amended complaint describes at least twelve instances in which Berkeley removed Sullivan and Bredenberg from their encampment and either (1) disposed of or improperly stored their property, including tents, sleeping bags, and winter coats, without sufficient due process, or (2) targeted them because of their political engagement. Construed in the light most favorable to plaintiffs, these allegations raise a plausible inference that Berkeley has a practice or custom of such conduct.

Berkeley again contends that because plaintiffs lived at the Here/There encampment for at least ten months without removal by the City, Berkeley necessarily lacks a policy of removing unsheltered homeless residents from public spaces. This argument ignores, however, that the Here/There encampment was on BART property, not City property. Nor does the failure to allege that Berkeley specifically denied Sullivan and Bredenberg shelter prevent them from pleading *Monell* liability. Again, the amended complaint alleges that of the nearly two thousand individuals who sought shelter through the City's program, less than one hundred individuals received it. Moreover, the practices at issue in the amended complaint relate to Berkeley's removal of homeless residents in violation of the Constitution, not to the denial of services. The amended complaint therefore sufficiently alleges that there is a policy or practice of evicting homeless residents in violation of Fourth, Fourteenth and First Amendments.

## CONCLUSION

For the foregoing reasons, BART's motion to dismiss pursuant to FRCP 12(b)(1) is **GRANTED**. Berkeley's motion to dismiss pursuant to FRCP 12(b)(1) is **DENIED** and its motion to dismiss pursuant to FRCP 12(b)(6) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion and plaintiffs must plead their best case. Not only as to the shortfalls expressly addressed in this order but also as to all other arguments raised in BART and Berkeley's motions. Any such motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: January 19, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12