IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARK SULLIVAN, JAMES BLAIR, TOAN NGUYEN, ARIKA MILES, and ADAM BREDENBERG,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>Defendant. | No. C 17-06051 WHA<br><br>**ORDER GRANTING IN PART MOTION FOR LEAVE TO AMEND** |

## INTRODUCTION

In this action by homeless individuals against a municipality, plaintiffs move for leave to file an amended complaint. For the reasons herein, plaintiffs' motion is **GRANTED IN PART**.

## STATEMENT

Plaintiffs are members of an "intentional community of homeless Berkeley residents" that refer to themselves as "First They Came for the Homeless" or FTCftH. Since forming in 2015, the group has been removed from several locations in Berkeley, including from twelve locations between October 2016 and January 2017 alone. These removals were carried out in the early morning by Berkeley police, who seized and threw away property that the group could not carry or otherwise left behind (Dkt. No. 93-2 ¶¶ 13, 16–17, 52).

In October 2017, three pro se plaintiffs, Clark Sullivan, James Blair, and Toan Nguyen filed this lawsuit. That same month, plaintiffs (now through counsel) filed an amended complaint alleging violations of the Americans with Disabilities Act and the First, Fourth,

Eighth, and Fourteenth Amendments. An order dated January 19, 2018 dismissed all claims asserted against BART but allowed a portion of plaintiffs' constitutional claims to proceed against Berkeley. The dismissal order gave plaintiffs the opportunity to seek leave to amend. Plaintiffs now file the instant motion for leave to amend and append a proposed second amended complaint (Dkt. Nos. 1, 22, 83, 93). This order follows full briefing and oral argument.

**ANALYSIS**

The proposed second amended complaint does not reassert any claims against BART or seek relief under the ADA. Plaintiffs instead move to: (1) add Benjamin Royer as a new class representative; (2) include additional factual allegations with respect to their Eighth Amendment claim; and (3) expand the proposed class to include all similarly situated homeless persons in Berkeley (with a subclass of FTCftH members asserting a First Amendment retaliation claim).

FRCP 15(a)(2) advises, "The court should freely give leave when justice so requires." In ruling on a motion for leave to amend, courts consider: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended their complaint. Futility alone can justify denying leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). For purposes of assessing futility on this motion, the legal standard is the same as it would be on a motion to dismiss under FRCP 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Beyond a cursory assertion that plaintiffs "will not be able to certify a class because they do not meet the 'commonality' and 'typicality' requirements of Rule 23," Berkeley does not raise an objection to the proposed expansion of the putative class (Dkt. No. 96 at 6). The parties debate only whether plaintiffs' amendments to their constitutional claims, including the addition of Royer as a class representative, are futile.

1.  **FOURTH AND FOURTEENTH AMENDMENT CLAIMS.**

Under the Fourteenth Amendment, homeless individuals are entitled to meaningful notice and an opportunity to be heard before their unabandoned property is seized and

2

destroyed. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012). Plaintiffs are also entitled to Fourth Amendment protections with respect to their property. *Id.* at 1030–31. A "seizure" of property under the Fourth Amendment occurs when there is "some meaningful interference with an individual's possessory interests in that property." *Id*. at 1027.

The January 19 order found that only Sullivan and Bredenberg had adequately alleged claims under the Fourth and Fourteenth Amendments. The Fourth and Fourteenth Amendment claims brought by Miles, Blair, and Nguyen were accordingly dismissed. The second amended complaint does not seek to reassert claims by them. It does, however, include such claims on behalf of Royer, the newly proposed plaintiff.[1]

Berkeley does dispute that the second amended complaint adequately states Fourth and Fourteenth Amendment claims on behalf of Royer. Rather, Berkeley attempts to relitigate whether Sullivan and Bredenberg have adequately stated such claims, pointing to declarations filed by Sullivan and Bredenberg earlier in this action to argue that their prior statements conflict with allegations in the second amended complaint.

Contrary to Berkeley, Sullivan and Bredenberg's prior declarations do not conclusively negate their allegation that they lost property as a result of Berkeley's evictions. In support of plaintiffs' motion for preliminary relief, Sullivan submitted a declaration stating that after an eviction in December 2016 he was able to retrieve his belongings six months later. He further stated, however, that "the items were not actually 'stored,' but were thrown in a dumpster" (Dkt. No. 38 ¶ 14). In support of that same motion, Bredenberg declared that he "*personally* never lost anything to the cops" (Dkt. No. 26 at ¶ 8). Neither statement contradicts plaintiffs' allegation — which concerns twelve evictions between 2016 and 2017 — that Sullivan lost

---

[1] Berkeley argues that plaintiffs' motion should be denied to the extent the proposed second amended complaint asserts Fourth or Fourteenth Amendment claims on behalf of Miles, Blair or Nguyen. In their reply, however, these plaintiffs confirm that they do not seek to reassert their First, Fourth or Fourteenth Amendment claims (Dkt. No. 101 at 2–3).

3

personal property and Bredenberg lost *shared* property (as opposed to personal property) as a result of Berkeley's conduct.[2]

Taking all allegations of material fact as true and construing such facts in the light most favorable to plaintiffs, Berkeley has failed to show that plaintiffs' proposed amendments are futile. Plaintiffs' request for leave to amend their Fourth and Fourteenth Amendment claims is accordingly **GRANTED**.

**2.   FIRST AMENDMENT CLAIM.**

The January 19 order denied Berkeley's motion to dismiss Sullivan and Bredenberg's First Amendment retaliation claim, finding that the amended complaint adequately alleged that Berkeley targeted FTCftH for evictions between October 2016 and January 2017 based on the content of the group's speech and its political engagement. But because Miles, Blair and Nguyen alleged that they had not joined the encampment *until* 2017, the January 19 order found that they failed to demonstrate how they engaged in the alleged protected activity or were subjected to the City's retaliatory conduct. Plaintiffs now move to add a First Amendment claim on behalf of Royer, who, like Sullivan and Bredenberg, alleges that he has at all relevant times been a member of FTCftH (Dkt. No. 93-2 ¶ 30).

To bring a First Amendment retaliation claim, a plaintiff must allege: (1) that he engaged in constitutionally protected activity; (2) that the defendants' actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) that the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).

Rather than argue that the second amended complaint inadequately alleges that Berkeley targeted FTCftH for evictions based on the group's political engagement through City Council meetings and op-ed pieces, Berkeley argues that Royer's failure to allege how he *personally* participated in City Council meetings or op-eds dooms his retaliation claim.

---

[2] Berkeley requests judicial notice of these declarations. A court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). Accordingly, Berkeley's request for judicial notice is **GRANTED**.

4

District courts must give plaintiffs the benefit of every reasonable inference drawn from the "well-pleaded" allegations in a complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963). Here, the second amended complaint alleges that Royer has at all times been a member of FTCftH, that beginning in 2015 FTCftH has engaged in constitutionally protected activity by publicly opposing Berkeley's response to the City's homelessness crisis, and that Berkeley began an aggressive campaign of evictions as a result. Through such allegations, Royer has sufficiently pled "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs' request to amend their First Amendment retaliation claim is **GRANTED**.[3]

### 3. EIGHTH AMENDMENT CLAIM.

The January 19 order dismissed plaintiffs' Eighth Amendment claim, finding that plaintiffs had failed to allege that Berkeley actually enforced California Penal Code Section 647(e) as to any named plaintiff.

Section 647(e) makes it a misdemeanor to "lodge[] in any building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it." In the second amended complaint, plaintiffs still do not allege that they have been cited or arrested under the statute. Sullivan, Blair, Bredenberg, Nguyen and Royer do allege, however, that Berkeley has cleared them from encampments under *threat* of arrest pursuant to Section 647(e) (Dkt. No. 93-2 ¶¶ 48–49).

This order finds that the newest complaint still fails to plead an Eighth Amendment claim. Here, unlike the plaintiffs in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated by settlement*, 505 F.3d 1006 (9th Cir. 2007), and *Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992) (Judge Carl Atkins), plaintiffs do not allege that they were ever arrested or cited for sitting, sleeping, or performing other life sustaining activities.

---

[3] Because this order finds that plaintiffs have adequately stated a First Amendment claim based on their alleged criticisms of Berkeley through attending City Council meetings and writing op-eds, it is unnecessary to reach the question of the extent to which FTCftH's decision to camp in prominent places throughout Berkeley is protected activity under the First Amendment.

5

Relying on *Cobine v. City of Eureka*, 250 F. Supp. 3d 423 (N.D. Cal. 2017) (Judge Jeffrey White), plaintiffs argue that they need only allege that they have been threatened with arrest to state a claim. This order disagrees. *Cobine* did not squarely address whether the threat of a statute's enforcement is sufficient to invoke the Eighth Amendment's protections. Although the decision described an instance in which the plaintiffs were told that they would be prosecuted under the challenged ordinance if they failed to leave their encampment, the relevant pleading actually *did* allege that a number of the *Cobine* plaintiffs had been cited or arrested under the ordinance (Case No. 16-cv-02239, Dkt. No. 46).

Nor did *Bell v. City of Boise*, 834 F. Supp. 2d 1103, 1108 (D. Idaho 2011) (Judge Ronald Bush), or *Jones* — on which *Cobine* relied as persuasive authority — support such a proposition. Notably, all of the plaintiffs in *Bell* had been cited and convicted under the challenged ordinances.

In *Jones*, a two-to-one decision, our court of appeals ultimately withdrew its opinion at the joint request of the parties. Before it was vacated, the decision held that the plaintiffs there need not have been convicted under the challenged ordinance to bring an Eighth Amendment claim. Citing *Ingraham v. Wright*, 430 U.S. 651, 667 (1977), the majority explained that the Cruel and Unusual Punishment Clause places three distinct limits on the state's criminal law powers. *First*, it limits the kinds of punishment that can be imposed on those convicted of crimes. *Second*, it proscribes punishment grossly disproportionate to the severity of the crime. *Third*, it imposes substantive limits on what can be made criminal and punished as such, a protection that "governs the criminal law process as a whole, not only the imposition of punishment postconviction." 444 F.3d at 1128. In holding that the criminal process "may begin well before conviction," the majority cited *Dickey v. Florida*, 398 U.S. 30, 43 (1970), for the proposition that the Eighth Amendment may attach pre-arrest or citation.

The *Jones* majority took an aggressive reading of the Supreme Court's decisions in *Ingraham* and *Dickey*. Notably, *Ingraham* did not address the temporal reach of the Eighth Amendment but rather simply declined to extend it to corporal punishment of public school students. And, in *Dickey*, the Supreme Court addressed the right to a speedy trial under the

Sixth Amendment, not the prohibition on cruel and unusual punishment. This order is accordingly unwilling to extend a vacated decision yet a step further and hold that the Eighth Amendment's protections attach at the mere threat of arrest as opposed to an arrest or citation.

Plaintiffs' request to amend their Eighth Amendment claim is accordingly **DENIED.**[4]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to amend is **GRANTED IN PART**. Plaintiffs shall file their second amended complaint, making the changes allowed above but adding nothing more, by **MARCH 30 AT NOON**. Please, no more FRCP 12 practice directed at this pleading.

**IT IS SO ORDERED.**

Dated: March 26, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[4] At the hearing on plaintiffs' motion, Berkeley argued that the Eighth Amendment claim fails for the alternative reason that plaintiffs' own allegations demonstrate that they have been permitted to camp unbothered in Berkeley for upwards of ten months at a time. To the contrary, the complaint alleges that during the winter of 2016, FTCftH was evicted from at least twelve locations. The evictions "only ended once the FTCftH encampment moved to San Francisco Bay Area Rapid Transit ('BART')-owned land" (Dkt. No. 93-2 ¶¶ 52, 68).