FARIMAH BROWN, City Attorney, SBN 201227
LYNNE S. BOURGAULT, Deputy City Attorney, SBN 180416
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone:  (510) 981-6998
Facsimile:  (510) 981-6960
lbourgault@cityofberkeley.info

Attorneys for Defendant CITY OF BERKELEY

DAN SIEGEL, SBN 56400
ANNE BUTTERFIELD WEILLS, SBN 139845
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE & BRUNNER
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698

Attorneys for Plaintiffs CLARK SULLIVAN,
ADAM BREDENBERG and BENJAMIN ROYER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARK SULLIVAN, ADAM BREDENBERG AND BENJAMIN ROYER,<br><br>           Plaintiffs,<br><br>     vs.<br><br>CITY OF BERKELEY<br><br>           Defendant. | No.  3:17-cv-06051-WHA<br><br>**JOINT RESPONSE TO COURT ORDER RE: VIEWING**<br><br>Case Filed: October 23, 2017<br>Trial Date: May 20, 2019 |

On March 9, the Court requested that the parties meet and confer and provide suggestions for a Court viewing of one or two sites of current homeless encampments, and one or two proposed sites for a tent city.  On March 16, 2018, the parties proposed the Court visit (1) two sites of current homeless encampments, (2) two sites proposed by plaintiffs to be sanctioned encampments, and (3) several sites listed in Paragraph 49 of plaintiffs' First Amended

Complaint, where plaintiffs, and/or First They Came for the Homeless (FTCftH), previously encamped.

On March 28, 2018, the Court and counsel for the parties participated in a tour of several locations in the City of Berkeley, as further described below.

The Court has ordered the parties to submit a joint statement describing the locations visited and the information conveyed during the viewing. After meeting and conferring, the parties submit the following summary of the March 28, 2018 viewing.

**I.      Here/There Encampment (Adeline Street between 62nd and 63rd streets)**

A. The parties visited the site of a First They Came for the Homeless (FTCftH) encampment that was established at the site on October 31, 2017.

B. One named plaintiff, Benjamin Royer, resides at this encampment.

C. Plaintiff's counsel informed the Court that named plaintiff Adam Bredenberg is currently sleeping on a friend's couch, and that named plaintiff Clark Sullivan has his tent set up at a second FTCftH encampment near Aquatic Park in Berkeley.

D. Plaintiff's counsel informed the Court that all of the tents at the Here/There site belong to FTCftH members, and none of the tents are ceremonial.

E. Counsel informed the Court that the porta-potty next to the encampment was initially acquired in July, 2017 by "Friends of Adeline" who are supportive of the FTCftH encampment. Service of the porta-potty was paid for by Friends of Adeline until the City took over paying for the service in January, 2018. The City added a handwashing station more recently. The porta-potty and handwashing station are serviced on a daily basis.

F. Counsel showed the Court where the FTCftH encampment had been previously situated, on property owned by BART.

G. Counsel showed the Court the fencing installed by BART after the FTCftH encampment moved from BART property to City property.

H. Counsel for plaintiff informed the Court that the solar panels located at the encampment were installed by a supporter of FTCftH.

**II.     3195 Adeline Street (Berkeley Design Center area)/1900 Fairview Way (the HUB)**

A. The sidewalk/plaza area in front of Berkeley Design Center was the site of a FTCftH encampment from early October to October 7, 2016.

B. FTCftH also established an encampment at this site from October 18 to November 4, 2016.

C. Counsel informed the Court there were approximately 15 to 20 tents in the encampment.

D. Counsel informed the Court that plaintiffs in the related case, *Armstrong-Temple v. City of Berkeley*, Case No. 3:17-cv-06774-WHA, were arrested at this site for violations of the Penal Code unrelated to lodging. Only one of the three plaintiffs in the *Armstrong-Temple* case was living in a tent at the site.

E. Counsel showed the Court the location of the HUB at 1901 Fairview Street. The HUB is the City's coordinated entry point for housing, shelter and supportive services. In response to a question from the Court about whether a homeless person could come to 1901 Fairview (the HUB) for mental health or social services, counsel for defendant explained that the HUB is the entry point for housing services, and that some social and mental health services are also provided in association with housing. Counsel for defendant explained that the City has an adult mental health clinic a couple blocks away from the HUB where people can seek mental health services, and the City staffs other mental health clinics throughout the City.

**III.    Median at Adeline and Russell Street /Median at Adeline and Ward**

A. The median on Adeline Street near Russell was the site of a FTCftH encampment from October 7 to October 18, 2016.

B. The median on Adeline Street near Ward, across from Berkeley Bowl grocery store, was the site of a FTCftH encampment from December 2 to December 21, 2016.

1  C. In response to a question from the Court, the parties estimated that the medians
2     are approximately 40 feet wide.
3  D. Counsel for plaintiff told the Court there was either a picnic table or a bench at
4     the end of one of the medians at the time an encampment was there, that Counsel
5     for plaintiff believed was installed by the City.  Counsel for defendant could not
6     confirm this, but the parties noted that if there had been a picnic table or bench on
7     one of the medians, it has since been removed.
8  E. Counsel for defendant told the Court the City has a policy of not allowing
9     encampments on divisional islands (medians) because of traffic-related health and
10    safety concerns.
11 IV. **Triangular Lawn at Intersection of Shattuck Avenue and Adeline Street**
12 A. The parties showed the Court a small, triangular lawn that was the site of a
13    FTCftH encampment on October 18, 2016, for approximately one day.
14 B. Counsel for defendant told the Court that the City did not allow FTCftH to
15    remain at this location due to traffic-related health and safety concerns, because it
16    is a small divisional island surrounded by traffic.
17 C. Counsel for defendant pointed out the boundary between the City's property (the
18    small triangular lawn) and the adjacent private property (parking lot for adjacent
19    business).
20 D. Counsel for defendant explained that the City's Parks, Recreation & Waterfront
21    Department is responsible for maintaining the grass on the City property.
22 V. **2180 Milvia Street, Berkeley Civic Center**
23 A. The parties parked in the lot between the Civic Center building and Civic Center
24    Park, and walked to the front of the Civic Center building on Milvia Street.
25 B. The front of the Civic Center building was the site of a FTCftH encampment
26    from November 4 to November 7, 2016.  The encampment was removed the day
27    before the 2016 Presidential election.
28

C. FTCftH erected tents (1) on the north and south sides of the entry steps, (2) around the bike racks in front of the building, (3) between the building and the ballot box/voting receptacle, and (4) on the wide ledge surrounding the building.

D. FTCftH placed tarps and signs on and around the entry steps to the building.

E. According to counsel for defendant, tents were erected on the landings on each side of the building's entry doors, but it is not clear if people were inhabiting those tents.

F. Members of FTCftH poured red paint on the entry steps and front walls of the building, and they said the paint symbolized the blood of the homeless.

G. In response to a question from the Court, counsel for defendant stated that her office is located in the Civic Center building, on the north side of the Fourth Floor.

VI. **2180 Milvia South Curtilage Lawn (at Civic Center Building)**

A. After FTCftH moved off of the entry steps and sides of the Civic Center building on November 7, 2016, members established an encampment on an approximately 25-foot wide lawn between the building and the sidewalk on Allston Way. FTCftH stayed at this location from November 7, 2016 to November 17, 2016.

B. Counsel for defendant told the Court that during the time that FTCftH occupied the south curtilage lawn, a member of FTCftH used permanent paint and chalk to write messages on the sidewalk across from Berkeley High School, including messages endorsing suicide. Counsel for plaintiffs said she is aware of only one time that the City cited messages about suicide written on the sidewalk by one of the former members of the encampment. Counsel for plaintiffs explained that her understanding was that the messages were written by a man who suffers from suicidal ideation and had been taken into protective custody under Welfare & Institutions Code § 5150 several times in the past.

1      C.     Counsel for defendant explained that the City considers the lawn areas surrounding the north and south sides of the building "curtilage" that is subject to the City's Rules for City Visitors.

**VII.    2180 Milvia North Curtilage Lawn (at Civic Center Building)**

    A.     The parties pointed out to the Court the north lawn area, which is similar to the south lawn curtilage area.

    B.     FTCftH moved from the south lawn area to the north lawn area on November 18, 2016 and stayed there until December 2, 2016.

    C.     According to defendant's counsel, a member of FTCftH again wrote messages on the sidewalk in permanent paint and chalk, including messages endorsing suicide and swastikas. Plaintiff's counsel explained that she had not heard that anyone from FTCftH had been accused of painting swastikas on the sidewalk.

    D.     Counsel for defendant told the Court that the City required that FTCftH move away from the north lawn curtilage after someone smeared human feces on the front entry doors of the Civic Center building and in the First Floor bathroom. According to plaintiffs' counsel, FTCftH was not responsible for the incident. Counsel for defendant said the City required the encampment to relocate because it was also concerned about the painting of messages related to suicide and swastikas on the sidewalk in such close proximity to Berkeley High School.

**VIII.    Old City Hall, 2134 Martin Luther King Jr., Blvd**

    A.     Counsel for plaintiffs advised the Court that the lawn in front of Old City Hall is one of two sites plaintiffs propose be used as a tent city or sanctioned encampment. It was the site of former encampments.

    B.     Some members of FTCftH moved to the lawn in front of Old City Hall after BART posted notices that they needed to leave BART property at the Here/There sign on the Oakland/Berkeley border. The encampment remained at the Old City Hall lawn from October 31, 2017 to February 7, 2018.

1    C.   Eventually, three different encampments located to this area.  The FTCftH
2         encampment occupied the center lawn.  According to plaintiff's counsel, an
3         encampment that called itself "Dare to Change," and advocated being drug and
4         alcohol free, occupied the south area under the trees (along Allston Way), and a
5         third encampment of loosely associated individuals occupied the lawn on the
6         north end of the front of Old City Hall.  According to defendant's counsel, the
7         group of loosely-associated individuals encamped on the south side under the
8         trees, and the "Dare to Change" group encamped on the northern lawn.
9    D.   The parties showed the Court the entry landing to Old City Hall where a
10        homeless man living in a tent on the landing had caused a fire by lighting a
11        candle in his tent.  The Court was shown the burn damage to the building and a
12        nearby Redwood tree.  According to plaintiff's counsel, the fire was not started
13        by a member of FTCftH.  Plaintiffs' counsel told the Court that she thought the
14        fire was extinguished by fire extinguisher that was at the encampment. Counsel
15        for defendant said that the Berkeley Fire Department put out the fire.
16   E.   Counsel for defendant informed the Court that a homeless man living in a
17        structure built under a bush on the south side of the building, under the trees, had
18        previously started a fire that burned his structure and the bush.  Plaintiff's counsel
19        stated that this fire was also not associated with a member of FTCftH.  The
20        Berkeley Fire Department put out the fire.
21   F.   The parties showed the Court traces of paint on the building caused by someone
22        painting messages on the edifice shortly after FTCfhH set up its encampment on
23        the Old City Hall lawn.  The Public Works department tried to power wash the
24        paint off of the building, but outlines of the messages can still be seen.
25   G.    Counsel for defendant showed the Court where a homeless person had been
26        living on the entry landing right in front of the entry doors to Old City Hall.
27   H.   In response to a question from the Court, counsel for defendant explained that
28        behind the building is a parking lot used by city employees and employees of the

adjacent Alameda County Superior Court.  Defense counsel pointed out the courthouse and the Public Safety Building to the north of the courthouse.

I. The parties showed the Court the porta-potty located at the southwest corner of Civic Center Park, across Martin Luther King Jr. Blvd from Old City Hall.  This porta-potty has been at this location for at least the past ten years and is serviced and paid for by the City.  The City added a handwashing station more recently.

J. In response to questions from the Court, the parties explained that Old City Hall is currently used for City Council meetings and other meetings of other city-related public bodies, but the City is in negotiations to begin using space at the Berkeley Unified School District for council meetings.

**IX.  Second Street between Cedar Street and Page**

A. The parties stopped at the intersection of Cedar and Second streets and showed the Court the site of the Pathways Project, which will provide shelter, temporary housing, and services to unsheltered individuals.  Pathways will offer approximately 45 to 50 beds in two modular buildings, and services from another modular building on site.  Showers will be provided on site.

B. The parties then drove down Second Street and viewed the tents and other structures along that street.  The parties got out of their cars at Second and Page streets.  Counsel for defendant told the Court that periodically homeless residents of this area are asked to move their shelters and belongings and the City's Public Works department removes any debris and garbage left behind, and cleans the area.

C. In response to a question from the Court about whether the area is safe at night, Berkeley Police Lt. Kevin Schofield said it does not have a particularly safe feeling when he has been in the area at around 4:00 a.m., but that the Area Coordinator for West Berkeley, Officer Christopher Scott, would have more detail about who lives there and what goes on there, as he is often patrolling the area and talking to the homeless residents.

D. Counsel for defendant told the Court that Berkeleyside in March, 2018 ran a feature video about a homeless resident of Second Street who said she came to live on Second Street from Placerville after losing her job and housing in Placerville.

X. **Grass Area at Ninth Street and Ashby, West of Ashby Plaza**

A. Plaintiff's counsel showed the Court a stretch of grass near Berkeley Bowl West, between Ashby Plaza and an apartment building. Plaintiffs propose using this grassy area as a potential tent city or sanctioned encampment.

B. Counsel for defendant told the Court the site is slated to be developed as a Class I bicycle/pedestrian pathway, and that construction is scheduled to begin in Fall, 2018. The City has received federal and state grant funding to construct the pathway. This will be Phase 2 of the bicycle/pedestrian pathway. The City completed Phase 1 in 2008, and that pathway connects to a pathway in the City of Emeryville. This site has been listed as a Class I bicycle/pedestrian pathway on the City's Transportation plan since 2000.

Dated: April 12, 2018                    BERKELEY CITY ATTORNEY'S OFFICE

By _____/s/   Lynne S. Bourgault_____
LYNNE S. BOURGAULT, Deputy City Attorney
Attorneys for Defendant CITY OF BERKELEY

Dated: April 12, 2018                    SIEGEL, YEE & BRUNNER

By _____/s/   EmilyRose Johns_____
EMILYROSE JOHNS, Attorneys for Plaintiffs
CLARK   SULLIVAN,   ADAM   BREDENBERG
and BENJAMIN ROYER