IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLARK SULLIVAN, ADAM BREDENBERG,
and BENJAMIN ROYER,

    Plaintiffs,

  v.

CITY OF BERKELEY,

    Defendants.

No. C 17-06051 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

In this action for violations of constitutional rights, plaintiffs move for class certification. For the reasons herein, plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**. This order certifies one class, appoints Benjamin Royer as class representative, and appoints plaintiffs' counsel of record as class counsel.

**STATEMENT**

Plaintiffs Clark Sullivan, Adam Bredenberg, and Benjamin Royer are or were members of a community of homeless Berkeley residents that refer to themselves as "First They Came for the Homeless" or FTCftH. FTCftH is a "protest encampment." At each encampment, the group puts up signs to, among other things, promote housing rights and express criticism of Berkeley's treatment of the homeless. Since forming in 2015, the group has been removed from several locations in Berkeley, including from twelve locations between October 2016 and January 2017 alone. These removals were carried out in the early morning by Berkeley police,

who seized and threw away property that the group could not carry or otherwise left behind (Dkt. Nos. 106, 123).

Plaintiffs seek to represent a class of nearly 1000 individuals experiencing homelessness in Berkeley. Plaintiffs also seek to represent a subclass of individuals who camped with FTCftH between October 2016 and January 2017. Plaintiffs articulate two theories of liability. *First*, plaintiffs claim that Berkeley violates homeless individuals' Fourth and Fourteenth Amendment rights by collecting, storing, and disposing of unattended belongings without sufficient notice or opportunity to be heard. *Second*, plaintiffs claim Berkeley targeted FTCftH for frequent enforcement actions — despite FTCftH maintaining a clean, drug-free camp — because FTCftH protested Berkeley's policies. According to plaintiffs, these enforcement actions against FTCftH amounted to retaliation against protected activity in violation of the First Amendment (Dkt. No. 117).

Based on the foregoing theories, plaintiffs seek to certify the following two classes:

1. <u>Due Process Class</u>: All homeless individuals in the City of Berkeley who have been, are now, or will be subject to the City's policies and practices of property collection, storage and disposal without adequate notice or a meaningful opportunity to be heard.

2. <u>First Amendment Subclass</u>: All homeless individuals who camped with First They Came for the Homeless between October 2016 and January 2017.

This order follows full briefing and oral argument.[1]

**ANALYSIS**

Pursuant to FRCP 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of the class representatives and counsel. The proposed class must also be ascertainable. In addition to satisfying FRCP 23(a)'s prerequisites, the party seeking class

---

[1] Following the close of briefing on plaintiffs' motion for class certification, Berkeley moved to strike certain arguments it contends plaintiffs raised for the first time on reply (Dkt. No. 131). Berkeley's motion is **DENIED**. This order disagrees that the arguments Berkeley moves to strike were improperly raised for the first time in plaintiffs' reply brief. Rather, they were properly raised in response to arguments asserted in Berkeley's opposition.

2

certification must show that the action is maintainable under FRCP 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Plaintiffs seek certification of the Due Process Class under FRCP 23(b)(2), which requires that the primary relief sought be declaratory or injunctive. Plaintiffs seek certification of the First Amendment Class under FRCP 23(b)(3), which requires predominance and superiority.

### 1. NUMEROSITY.

Numerosity is satisfied by showing that "the class is so numerous that joinder of all members is impracticable." FRCP 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members. *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). There is no dispute that the proposed Due Process Class, which encompasses nearly 1000 individuals, satisfies FRCP 23(a)(1)'s numerosity requirement.

The proposed First Amendment Subclass, by contrast, does not meet this requirement. Plaintiffs define the proposed First Amendment Subclass as "all homeless individuals who camped with First They Came for the Homeless between October 2016 and January 2017." Plaintiffs estimate that twenty-five individuals regularly camped with FTCftH during the class period while an unknown number of additional individuals camped with FTCftH for select portions of the class period. Given this relatively low number of putative class members, this order disagrees that joinder of all members of the subclass would be impracticable.

To be sure, "in determining whether joinder is impracticable in a particular case, the court should consider not only the class size but other factors as well, including the geographical diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought." *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) (Judge Marilyn Patel). Here, the nature of plaintiffs' First Amendment retaliation claim weighs in favor individual actions. According to Mike Zint, founder of FTCftH, each of FTCftH's encampments included art and signs indicating that the group was a "protest encampment" and "promot[ing] rights like the human right to housing and sa[ying] critical things about the City of Berkeley" (Dkt. No. 123 ¶

3

12). As plaintiffs do not dispute, some plaintiffs' political protest — unlike other members of FTCftH — was solely through camping with FTCftH and not through writing op-eds or speaking at City Counsel meetings. The particular manner and form of the putative class members' political engagement or speech will accordingly be varied. Retaliation claims for monetary damages stemming from such varied activities are best heard on an individual basis. This order recognizes that the proposed class members are homeless or formerly homeless individuals with limited resources to pursue individual remedies. Nevertheless, it would not be unduly difficult for the small number of individuals who camped with FTCftH during the relevant time period to initiate separate suits. Plaintiffs have therefore failed to show that FRCP 23(a)(1)'s requirements have been met with respect to the First Amendment Subclass. Plaintiffs' motion to certify this class is **DENIED**.

### 2. COMMONALITY.

Commonality is satisfied if "there are questions of law or fact common to the class." FRCP 23(a)(2). The party seeking class certification must show that their claims depend on a common contention "capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (emphasis removed) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiffs' Fourth and Fourteenth Amendment claims present common issues capable of classwide resolution. The claims are limited in scope. Plaintiffs challenge Berkeley's citywide policy and practices in connection with the collection and storage of homeless residents' property. Under the Fourteenth Amendment, homeless individuals are entitled to meaningful notice and an opportunity to be heard before their unabandoned property is seized and destroyed. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012). A "seizure" of

property under the Fourth Amendment occurs when there is "some meaningful interference with an individual's possessory interests in that property." *Id.* at 1027. Common issues will accordingly include whether Berkeley does, in fact, collect and store property in the manner alleged and, if so, the legality of such citywide policies and practices.[2]

Berkeley primarily disputes commonality by arguing the merits of plaintiffs' claims. But in determining whether or not class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974) (citation omitted). A district judge may not investigate the likelihood of prevailing on the merits, but may only consider evidence relating to the merits if such evidence also goes to the requirements of FRCP 23. The legality of Berkeley's challenged policies and practices will accordingly not be determined at the class certification stage. For this same reason, Berkeley's argument that plaintiffs' injuries stem from isolated instances of employee misconduct rather than a citywide policy is unavailing. As Berkeley itself acknowledges, the City has a long-standing written policy regarding the collection, storage, and retrieval of property from homeless encampments. Commonality has therefore been demonstrated.

### 3. TYPICALITY.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and quotation marks omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

---

[2] This order disagrees that plaintiffs have failed to sufficiently identify which of Berkeley's alleged policies and practices violate the Fourth and Fourteenth Amendments. Plaintiffs clearly assert that Berkeley seizes property from homeless residents without sufficient notice and does so in a way that prevents the retrieval of such property in a usable condition (or at all).

5

Plaintiffs challenge Berkeley's policy on the ground that homeless individuals subject to enforcement actions do not receive adequate notice about how to retrieve seized property. Plaintiffs further challenge the policy on the ground that it allows Berkeley to seize property without adequately inquiring into whether or not it is truly unattended and contend Berkeley either damages seized items or fails to store them in a way that prevents damage. As a result of these citywide policies and practices, plaintiffs allege that Berkeley violated their constitutional rights and challenge these practices on behalf of all other potential class members. Of the three named plaintiffs, however, only Royer's Fourth and Fourteenth Amendment claims under these theories are typical.

Berkeley first argues that plaintiffs' claims are not typical given plaintiffs' assertion that the City removes FTCftH more frequently than other encampments. To be sure, plaintiffs assert that Berkeley targeted FTCftH for evictions due to the group's political activities. This allegation, however, is relevant to plaintiffs' First Amendment claim, not plaintiffs' Fourth and Fourteenth Amendment claims. Plaintiffs do not assert that the City's policies and practices with respect to the collection and storage of unattended property were different as between FTCftH and other homeless individuals in Berkeley. Berkeley's concern accordingly fails to show that plaintiffs' Fourth and Fourteenth Amendment claims are atypical.

Our court of appeals has recognized, however, that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Although Berkeley does not cite this principle, it notes that Sullivan and Bredenberg relied on the encampment's supporters to move and collect the communal and personal property they claim to have lost as a result of the City's conduct. Sullivan alleges that he lost a tent and a suitcase full of clothing during the City's enforcement actions. But Sullivan admitted during his deposition that he handed off his tent to a supporter prior to its collection by the City. Regarding the suitcase, a volunteer retrieved it from storage prior to Sullivan's discovery that the clothing items were missing (Dkt. Nos. 122, 126-5). Bredenberg did not lose any personal property. Rather, he lost shared property belonging to the camp.

Sullivan similarly claims to have lost communal items. Yet plaintiffs acknowledged that supporters tasked with moving communal property during evictions sometimes lost these items (Dkt. Nos. 120, 126-3). As a result, Sullivan and Bredenberg cannot conclusively say that their property was lost or damaged at the hands of the City. This order accordingly concludes that Sullivan and Bredenberg are vulnerable to unique defenses that are atypical and threaten to become the focus of this lawsuit.

The same cannot be said of Royer, who claims the City seized his belongings — including his tarp, sleeping bag, and clothing — during an early-morning enforcement action in December 2016. Unlike Sullivan and Bredenberg, the encampment's supporters were not involved in moving this property from the encampment or retrieving it from storage (Dkt. Nos. 121, 126-4). While Berkeley faults Royer for not making additional efforts to reclaim his property beyond asking other encampment members and supporters for help, Royer explained that he took no further action because the City failed to explain how he could claim his seized property. Berkeley's argument that plaintiffs "cannot genuinely claim they did not know who to contact about how to retrieve stored property" presents a merits questions that need not be resolved at the class certification stage. Royer's Fourth and Fourteenth Amendment claims are therefore typical.[3]

### 4. ADEQUACY.

FRCP 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This prerequisite has two parts: (1) that the proposed representative plaintiff and his counsel do not have any conflicts of interest with the proposed class; and (2) that they will prosecute this action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Berkeley argues that Royer and the other plaintiffs are antagonistic to absent class members and are therefore inadequate representatives because, unlike other encampments, FTCftH imposes rules on its members and is drug- and alcohol-free. This order

---

[3] To the extent plaintiffs' Fourth and Fourteenth Amendment claims stem from Berkeley's policy of not storing damp or large items such as mattresses and furniture, plaintiffs fail to establish standing for such violations. Plaintiffs do not dispute that they were not personally affected by these alleged practices. Accordingly, plaintiffs cannot certify a class under such theories.

7

disagrees. Nothing in the record indicates that Royer has a conflict of interest with absent class members or will not prosecute this action vigorously on behalf of the class.

Berkeley does not challenge the adequacy of plaintiffs' counsel, Siegel, Yee & Brunner, as class representatives. Nor does Berkeley dispute that plaintiffs' counsel would prosecute this action vigorously on behalf of class members. As the record reflects, Siegel, Yee & Brunner has experience representing plaintiffs in complex class and civil rights actions (Dkt. No. 119). This order accordingly finds Royer and his counsel to be adequate representatives as required by FRCP 23(a)(4).

### 5. FRCP 23(B)(2) GENERAL APPLICABILITY.

Plaintiffs seek to certify the Due Process Class under FRCP 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Berkeley does not dispute that plaintiffs' entitlement to injunctive relief can be determined for the Due Process Class as a whole. Rather, Berkeley argues that certification under FRCP 23(b)(2) is inappropriate because plaintiffs fail to identify the injunctive relief they seek with "reasonably particular detail" and that plaintiffs' requested injunctive relief "is meaningless and unspecific." This order again disagrees.

Although plaintiffs do not yet propose a specific injunction that would bring Berkeley's policies in line with the requirements of due process, Berkeley fails to explain why it would be impossible to fashion an appropriate injunction to cover Royer's Fourth and Fourteenth Amendment claims. Nor do Berkeley's authorities support its position. In certifying a FRCP 23(b)(2) class of homeless individuals whose personal belongings were subject to seizure by the defendants, the district court in *Lyall v. City of Denver*, 319 F.R.D. 558, 566 (D. Colo. 2017) (Judge William Martinez). explained:

> "[T]he Court has no difficulty forecasting the specific terms of an injunction that would remedy Plaintiffs' alleged injury. The injunction could flatly bar the Sweeps. Or it could, for example, require Denver to post notices of a certain type with specific language in certain places for a specific amount of time ahead of any Sweep. The injunction could also establish procedures for handling seized property."

8

So too here.  Certification under FRCP 23(b)(2) is therefore appropriate.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is **GRANTED IN PART AND DENIED IN PART**.  The following class is **CERTIFIED**:  All homeless individuals in the City of Berkeley who are now subject to the City's policies and practices of property collection, storage and disposal.  This class definition shall apply for all purposes, including settlement.  Benjamin Royer is hereby **APPOINTED** as class representative.  Plaintiffs' counsel from Siegel, Yee & Brunner are hereby **APPOINTED** as class counsel.  The only claims certified for class treatment are Royer's Fourth and Fourteenth Amendment claims for injunctive and declaratory relief (not damages or damages equivalents) concerning the extent to which Berkeley's policies and practices with respect to the collection, storage and disposal of homeless individuals' property comply with the Fourth and Fourteenth Amendments.

By **OCTOBER 5 AT NOON**, the parties shall jointly submit a proposal for class notification with a plan to distribute notice.  In crafting their joint proposal, counsel shall please keep in mind the undersigned judge's guidelines for notice to class members in the "Notice and Order Regarding Factors to be Evaluated for Any Proposed Class Settlement" (Dkt. No. 108).

**IT IS SO ORDERED.**

Dated: September 25, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE